Samuel Douglas WEST, Appellant,

v.

The STATE of Texas, Appellee.

No. 067–84.

Court of Criminal Appeals of Texas,
En Banc.

Jan. 8, 1986.

Randy Schaffer, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty. and Ray Elvin Speece & Dick Bax, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

TOM G. DAVIS, Judge.

Appellant pled guilty to an indictment for aggravated rape. The trial court sentenced appellant to twenty-five years imprisonment. In his sole ground of error on appeal, appellant claimed the plea was not knowing and voluntary because his retained counsel misinformed him of the sentencing consequences. The Houston Court of Appeals reversed. See *West v. State*, 661 S.W.2d 305 (Tex.App.—Houston [1st Dist.] 1983). We granted the State's petition to review the correctness of the Court of Appeals holding that the plea was not knowing and voluntary.

■ Before turning to the merits, we must address a procedural point raised by appellant. Appellant has moved to dismiss the State's petition on the ground that it was not timely filed.

The Court of Appeals reversed the case on November 17, 1983. Appellant claims that the ruling became final on December 2, 1983, fifteen days after the decision reversing the case, because the State did not file a motion for rehearing in the Court of Appeals. See Tex.Cr.App.R. 209(b) and (c). The State then had thirty days to file a petition for discretionary review with the clerk of the Court of Appeals. Art. 44.-45(b)(2), V.A.C.C.P. The thirtieth day from December 2, 1983, was January 1, 1984. Because that day was a legal holiday, the date for filing would be extended to January 2, pursuant to Tex.Cr.App.R. 7. The State did not file its petition in the Court of Appeals until January 4, thirty-three days, by appellant's count, after the Court of Appeals' decision became final. Thus the State filed three days late, according to appellant.

Appellant's conclusion is incorrect. A petition for discretionary review must be filed within 30 days after the final ruling of the Court of Appeals. Art. 44.45(b)(2), supra. "Final ruling of the court" is defined to mean "the 16th day after the date of the delivery of the court's opinion or order where a motion for rehearing is permitted ... but is not filed...." Tex.Cr.App.R. 209(c).

In this case, the Court of Appeals delivered its opinion on November 17. By Rule 7, one starts to count the sixteen days on November 18. Thus the sixteenth day after the delivery of the opinion fell on Saturday, December 3. Again by Rule 7, however, the ruling did not become final "until the end of the next day which is neither a Saturday, Sunday, nor [a] legal holiday." Thus the ruling became final on Monday, December 5, the eighteenth calendar day after the decision was delivered.

Again by Rule 7, the thirty day period for filing a petition began to run not on the day the ruling became final, but on the following day, the 6th of December. With that date as the first day of the thirty-day period, it is clear that the thirtieth and last day for filing a petition fell on January 4, 1984, the day the State filed.

The State's petition was timely filed, and appellant's motion to dismiss is overruled.

■ We turn now to the appellant's claim that the plea was involuntary. Appellant and another defendant were indicted separately for the offense of aggravated rape. The other defendant went to trial first, and was convicted by a jury. The trial court assessed the other defendant's punishment—enhanced by a prior conviction for auto theft—at twenty-five years.

One month later, on March 5, 1982, appellant pled guilty before the same judge to the charge of aggravated rape. Before accepting his plea, the trial court fully and correctly admonished appellant of the rights he was giving up by his plea, and of the punishment range for the offense. See Art. 26.13, V.A.C.C.P. The court ascertained from counsel that there was no plea bargain, but that the State had agreed not to argue a specific number of years as punishment. (At the hearing on the motion for new trial, it came to light that the State had offered fifteen years throughout the plea negotiations, but appellant had rejected the offer.) Appellant's counsel asked the court to order a pre-sentence investigation. A stipulation of evidence substantiating appellant's guilt was admitted.

Before entry of the plea, appellant's counsel had filed a printed form motion for probation. After admitting the evidence of guilt, the trial court asked appellant's counsel, "Do you have anything on the question of probation?" Appellant then testified that he was 28 years old, had a wife and two children, had never been convicted of a felony, and requested that the court conduct a pre-sentence investigation before assessing punishment.

The court then stated that, having heard the plea of guilty and the evidence, "the Court will find [appellant] guilty as charged ..." The court ordered a pre-sen-

tence investigation by the probation department. The case was then adjourned to April 12, 1982.

When the proceedings resumed on April 12, two lawyers appeared for appellant. A psychiatrist testified in appellant's behalf. One of the questions put to the psychiatrist was:

"Q. And one of the things I told you is that the Judge could put Mr. West on deferred adjudication, at which time he would be able to strictly structure probationary period and that Mr. West then, if he violated any of the terms of probation, he would be subject to be sentenced to five to ninety-nine years or life in the Texas Department of Corrections.

"With that as a background, are there certain things that Sam should be required to do for the next ten years, if the Judge saw fit to put him on deferred adjudication?"

When the witness was excused, the court called for argument. Relying on this witness' testimony and the pre-sentence report, appellant's lawyers argued for deferred adjudication under Art. 42.12, Sec. 3d, V.A.C.C.P. The State argued against "any type of probation," but not for a specific number of years' confinement.

At the conclusion of argument, the court found appellant guilty and assessed punishment at twenty-five years.

Appellant moved for a new trial on the ground that his plea of guilty was involuntary, in that he did not knowingly and intelligently enter the plea with a full understanding of the sentencing consequences. The following paragraph from the motion for new trial sets out well appellant's complaint:

"The defendant's understanding as a result of the plea bargain negotiations was that the fifteen years that had been offered by the State would constitute a 'ceiling' on the maximum punishment that would be assessed. Although the defendant was properly advised by both counsel and the court that the entire punishment range was open to the court, defendant's understanding was that he would enter a plea of guilty without a recommendation to enable the court to consider a deferred adjudication of guilt and a probated sentence. The defendant was led to believe that the possibility existed that he would receive a deferred adjudication of guilt and be placed on probation, but at worst that his sentence would not exceed the fifteen years in prison that had been consistently recommended by the State throughout the plea bargain negotiations. Had the defendant realized that he could realistically receive the same sentence as his co-defendant, who was a second offender, he would not have waived his right to trial by jury and entered a plea of guilty."

This statement of the issue reveals the logical tension in appellant's claim. On the one hand he concedes that he was "properly advised by both counsel and the court that the entire punishment range was open to the court." On the other hand he insists that he never though he could "realistically" receive twenty-five years, because he was misled into believing that the sentence would be no more than the fifteen years offered by the State.

At the hearing on the motion for new trial, the lawyer who had represented appellant both at the plea and at sentencing testified as follows:

"Q. On the basis of advice you gave to [appellant], what was your communication with regard to what realistic range [of punishment] he was looking [sic]?

"A. I thought the realistic range was somewhere less than fifteen years and like I said, a very good chance of having deferred adjudication.

And on cross-examination:

"Q. Did you ever tell [appellant] that there is a ceiling, the worst you can get out of this case is fifteen years?

"A. Not in those terms. No sir."

Appellant testified at the hearing as follows:

"Q. You heard all of this discussion this morning about a fifteen years offer?

"A. Yes, sir. And I remember at one time [defense counsel] had said something about a fifteen year cap. In other words if I went to trial on it, that the State would argue not over fifteen years. My punishment wouldn't exceed over fifteen years.

"Q. Were you willing to accept fifteen years?

"A. No, sir.

" . . .

"Q. All right. What conversations did you have with [defense counsel] concerning what you could reasonably expect as your punishment if you entered this guilty plea?

"A. If I entered a guilty plea and did not get or receive the deferred adjudication, then my time would not exceed five to eight years. No more than fifteen as the cap.

"Q. Now was that expressed to you as his opinion as to what would happen? Let me clarify what I'm talking about, did he tell you that that's what the Judge said he would do or did he tell you that's what his opinion was that would happen?

"A. I don't remember."

The trial court denied the motion for new trial. The Court of Appeals framed the issue on appeal as follows:

"In the instant case, appellant claims to have been misled by his counsel in two respects; first, as to his eligibility for probation, and second, as to the likely range of punishment. But for the probation issue, we would be inclined to conclude that defense counsel's advice to reject the plea bargain offer and his opinion that the court would assess a lower punishment after pre-sentence investigation constituted a trial strategy that backfired.... However, considering this unsuccessful strategy, combined with appellant's misunderstanding of his eligibility for some type of probation, we

find that appellant's guilty plea was not knowingly and voluntarily entered because it was substantially induced by his counsel's significantly misleading statements and erroneous legal advice." (Citations omitted.)

Leaving the probation issue aside for the moment, we agree with the Court of Appeals that the plea is not involuntary just because the sentence exceeded what appellant expected, even if the expectation was raised by his attorney. We find the general rule for this type of case stated correctly in *Wellnitz v. Page*, 420 F.2d 935 (10th Cir.1970), as follows:

"... an attorney may offer his client a prediction, based upon his experience or instinct, of the sentence possibilities the accused should weigh in determining upon a plea. An erroneous sentence estimate by defense counsel does not render a plea involuntary.... And a defendant's erroneous expectation, based on his attorney's erroneous estimate, likewise does not render a plea involuntary."

In urging the motion for new trial, appellate counsel characterized defense counsel's advice as "probably reasonable under the circumstances in light of the comparison of [appellant's] record to the co-defendant's record." We do not find that defense counsel's advice concerning the likely maximum sentence was outside the range of competence demanded of attorneys in criminal cases. *McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970).

The Court of Appeals decided, however, that because counsel's advice about the possible minimum punishment stated the law incorrectly, appellant was misled and his plea was involuntary.

The Court of Appeals reasoned as follows:

"The totality of the circumstances reflect that it was not at all unreasonable for appellant to have believed that he was eligible for and being considered for probation both at the time he entered his plea and thereafter until sentence was pronounced. In fact, he was never eligi-

ble for probation because conviction of aggravated rape precludes eligibility for probation. Art. 42.12, sec. 3f, *supra.* Further, trial counsel did not request the court to consider deferring adjudication of guilt until after the court found appellant guilty. At that point, the court was without power to defer adjudication of guilt pursuant to art. 42.12, sec. 3d(a), *supra.*"

■ Article 4, Sec. 11A of the Texas Constitution empowers trial courts "to suspend the imposition or execution of sentence and to place the defendant upon probation" after conviction. The Legislature has prescribed methods the courts may use to grant post-conviction probation. Article 42.12, Sec. 3, V.A.C.C.P., authorizes a form commonly known as "regular" or "initial" probation, in contrast to the form authorized in Sec. 3e, known as "shock" probation.

Yet another form of probation is authorized by Art. 42.12, Sec. 3d—known as deferred adjudication or unadjudicated probation. This form of probation is not that contemplated by Art. 4 of our Constitution or defined by Art. 42.12, Sec. 2(b) of the Code. *McNew v. State,* 608 S.W.2d 166 (Tex.Cr.App.1978).

All three forms of probation discussed above are independent of each other, in the sense that a defendant may be eligible under the statute for one or two forms, but not the other. For example, a defendant may be eligible for initial probation, but not shock probation. *State ex rel. Vance v. Hatten,* 600 S.W.2d 828 (Tex.Cr.App.1980).

■ Thus the Court of Appeals is right that appellant was not eligible for regular probation under Art. 42.12, Sec. 3f, *supra,* because the statute bars defendants convicted of aggravated rape from receiving this form of probation. Art. 42.12, Sec. 3f(a)(1)(C), *supra; State ex rel. Vance v. Hatten, supra.* The exceptions to eligibility for deferred adjudication are also set out explicitly in the statute, Art. 42.12, Sec. 3d(d) and 3e(c). Nothing in the statute bars a trial court from granting deferred

adjudication under Art. 42.12, Sec. 3d, to a defendant charged with aggravated rape.

The testimony at the hearing on the motion for new trial clearly establishes that appellant and his attorney hoped for probation by way of deferred adjudication, not the regular probation of Art. 42.12, Sec. 3f. Moreover, the trial judge did not lose authority to grant deferred adjudication when he stated upon accepting the plea, "the Court will find [appellant] guilty."

Art. 42.12, Sec. 3d(a) reads, in pertinent part, as follows:

"Except as provided by Subsection (d) of this section, when in its opinion the best interest of society and the defendant will be served, the court may, after receiving a plea of guilty or plea of nolo contendere, hearing the evidence, and finding that it substantiates the defendant's guilt, defer further proceedings without entering an adjudication of guilt, and place the defendant on probation for a period as the court may prescribe, not to exceed 10 years."

"Judgment" is defined by Art. 42.01, Sec. 1, V.A.C.C.P., as follows:

"A judgment is the written declaration of the court signed by the trial judge and entered of record showing the conviction or acquittal of the defendant."

The transcript of the instant case contains the judgment of the court on a printed form. In a blank for the date at the top of the form has been handwritten March 5, 1982, the date of the plea. At the bottom of the form, printed language reads, in pertinent part:

"[After the plea of guilty] the Defendant was admonished by the Court of the consequences of the said plea; and it plainly appearing to the Court that the Defendant was mentally competent and that the plea is free and voluntary, the said plea was accepted by the Court and is here entered of record upon the minutes. The Court,* ..."

At this point, someone has written in an asterisk. At the very bottom of the page is a second handwritten asterisk, and beside it

the following printed words have been stamped on the page:

"AT WHICH TIME THE COURT RECESSED THIS HEARING IN ORDER THAT A PRE-SENTENCING INVESTIGATION MAY BE CONDUCTED."

The asterisk-note then continues, in handwriting, "On this the 12th day of April, A.D. 1982, the Court", and breaks off.

If one returns now to the printed form language and resumes at the asterisk, the sentence continues:

"... having heard the evidence submitted, and the argument of Counsel thereon, found the Defendant guilty of the offense indicated above, a felony, and assessed the punishment at confinement in the Texas Department of Corrections for the period indicated above."

"It is therefore considered, ordered and adjudged by the Court that the Defendant is guilty of the offense indicated above, a felony, and that the said Defendant committed the said offense on the date indicated above, and that he be punished by confinement in the Texas Department of Corrections for the period indicated above, and that the State of Texas do have and recover of the Defendant all costs of the prosecution, for which execution will issue."

Below this language on the second page of the form is the notation "Signed and entered this the 12th day of April A.D. 1982." And below that the trial judge has signed his name.

From this document it is clear that the written judgment of conviction, signed by the trial judge and entered of record, did not come into being until April 12, 1982. The court's oral finding of guilt—if that is what it was—on March 5 did not divest the court of power to grant deferred adjudication.

■ For this reason *Ex parte Kelly*, 676 S.W.2d 132 (Tex.Cr.App.1984) is not in point. In *Kelly*, defense counsel advised his client—accused of aggravated sexual abuse—that he would "get [the client] off"

on probation or shock probation once the client pled guilty. The client was eligible for neither of these forms of probation. This Court found that the inaccurate legal advice induced the defendant's plea of guilty, and accordingly granted habeas relief.

In the instant case, appellant was correctly advised that he was eligible for deferred adjudication.

The judgment of the Court of Appeals is reversed and that of the trial court is affirmed.

CLINTON, Judge, dissenting.

The Court errs in overruling appellant's motion to dismiss on its finding that on account of Tex.Cr.App. Rule 7 the State's petition for discretionary review was timely filed.

In context with Tex.Cr.App. Rules 208(b) and 209(c), Rule 7 operated to extend the time for the State's filing a motion for rehearing in this cause to Monday, December 5. A motion for rehearing was not filed, however.

Rule 7 was neither intended nor designed to extend the deadline for some subsequent action to be taken by either party by coupling the period artificially extended for one purpose with that specified for another purpose. In this instance, since a motion for rehearing was never filed the decision of the court of appeals became final for purposes of filing a petition for discretionary review December 3. That the date was a Saturday is of no moment.

I respectfully dissent.

TEAGUE, Judge, dissenting.

Having concluded that the Houston [First] Court of Appeals properly and correctly reversed the conviction of Samuel Douglas West, appellant, see *West v. State*, 661 S.W.2d 305 (Tex.App.-Houston [1st Dist.] 1983), I would place this Court's "improvidently granted" stamp on the State's

petition for discretionary review and dismiss same.

The court of appeals, however, is in error in one respect. It stated the following in its opinion: "Further, trial counsel did not request the court to consider deferring adjudication of guilt until after the court found appellant guilty. At that point, the court was without power to defer adjudication of guilt pursuant to art. 42.12, sec. 3d(a), supra." (308). The latter statement is incorrect. Although on March 5th the trial judge found appellant guilty, he did not at that time enter an adjudication of guilt. That occurred on April 12th. Thus, the majority correctly states the following: "Moreover, the trial judge did not lose authority to grant deferred adjudication when he stated upon accepting the plea, 'the Court will find [appellant] guilty.'" (At 634).

Nevertheless, given the total circumstances of this cause that related to appellant entering his plea of guilty, the court of appeals correctly held that appellant's plea was not knowingly and voluntarily entered.

Because the majority erroneously reverses the judgment of the court of appeals, I am compelled to dissent.