**David Ronald CULVER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09–88–223 CR.**

Court of Appeals of Texas, Beaumont.

Jan. 17, 1990.

Rehearing Denied Feb. 8, 1990.

Donald M. Brown, Morris, Brown & Davis, Conroe, for appellant.

Thomas D. Glenn, Asst. Dist. Atty., Conroe, for the State, appellee.

OPINION

WALKER, Chief Justice.

Appellant was indicted for the offense of Delivery of a Controlled Substance. Appellant waived a jury and entered a plea of guilty on June 8, 1988. The trial court assessed appellant's punishment at seven years in the Texas Department of Corrections. Appellant raises only one ground of error on appeal; that the appellant was denied effective assistance of counsel under the Sixth and Fourteenth Amendments of the United States Constitution, and Article 1, Section 10 of the Texas Constitution. Under this one ground of error, however, the appellant discusses in detail four examples of the alleged ineffective assistance on the part of his retained trial counsel, Mr. Jesus Rios. Specifically, appellant asserts that Mr. Rios:

1. Gave false advice to appellant that appellant would receive deferred adjudication or probation if appellant would plead guilty involuntarily;

2. Failed to adequately prepare for trial;

3. Deprived the appellant of his entrapment defense by said ineffective assistance;

4. Called no witnesses on appellant's behalf at the punishment hearing in support of appellant's request for probation although witnesses were available.

Appellant contends that these four deficiencies, considered together with the en-

tire fact situation presented to Rios, resulted in appellant's denial of effective assistance of counsel. We cannot agree.

Appellant is correct in citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), as the leading case on the question of ineffective assistance. In *Strickland, supra*, the Supreme Court set out a two-prong test to determine whether counsel was ineffective in his assistance at trial. The appellant must first demonstrate that counsel's performance was deficient; that is, counsel's assistance was not reasonably effective. Then, appellant must show prejudice; that is, appellant must show that but for counsel's *unprofessional errors*, the result of the proceeding would have been different. *Strickland, supra*, 466 U.S. at 686, 104 S.Ct. at 2063–64. (Emphasis added). Even though the instant case involved a plea of guilty, the *Strickland* test governs. *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). The standard in Texas as to whether the *Strickland* test has been met is based on an examination of the *totality of the representation rather than by isolated acts or omissions. Butler v. State*, 716 S.W.2d 48 (Tex.Crim.App.1986). (Emphasis added). The essence of the inquiry was enunciated in *Strickland:*

> "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result". *Strickland, supra*, 466 U.S. at 692, 104 S.Ct. at 2067.

At the outset, this Court takes note of the fact that appellant does not claim that exculpatory evidence existed and but for Mr. Rios' inadequate preparation, this evidence was not brought to light. In fact, it appears from the testimony elicited at the hearing on appellant's Motion for New Trial, that Mr. Rios was presented with the facts of appellant's involvement in the alleged delivery; those facts being that appellant was contacted by phone and was asked if he (appellant) could supply some cocaine to the caller. Appellant indicated he could and with the help of his co-defen-

dant, appellant acquired approximately one gram of cocaine. Appellant, co-defendant, and appellant's girlfriend then went to the apartment of the original caller in order to sell caller the cocaine.

The deal was transacted, but also present in the apartment was an undercover police officer who witnessed the entire delivery. The officer gave a prearranged code word to a backup team of officers, and appellant was arrested along with co-defendant and girlfriend. Appellant subsequently gave a written statement to the police detailing his involvement. The police also had the entire transaction recorded on audio cassette tape.

It is clearly apparent that a defense attorney presented with the above factual situation by his client could reasonably see that the prospects of a successful defense to the charge, i.e., a "not guilty" verdict, would be somewhat remote, unless there were gross procedural errors committed by the authorities. The testimony of Mr. Rios in the instant case reveals that six days after the appellant's arrest he filed a Motion for Discovery. Mr. Rios then testified that he had three to five telephone conversations with the prosecutor assigned to the case. The prosecutor evidently confirmed the fact that there was a tape recording of the delivery and that appellant gave a written confession. No errors appeared to have been made by the authorities, nor are any complained of by the appellant.

There was also testimony to the effect that appellant was a first offender, and was not a frequent user of illegal drugs as evidenced by negative urinalysis tests. Mr. Rios' testimony demonstrated awareness of all of the above facts well in advance of the plea date of June 8, 1988. Furthermore, Mr. Rios was presented with a plea bargain offer of seven years penitentiary time; an offer he felt was firm, and was not going to be revised for the benefit of his client.

Using the *Strickland–Butler*, "totality of the representation" standard, we cannot say that appellant has satisfactorily proven that any "unprofessional errors" were committed by Mr. Rios, nor that the results of the proceedings would have been different

even if "unprofessional errors" had been committed. A plea of guilty is a trial strategy, and the plea is not involuntary merely because the resulting sentence is greater than expected. *West v. State*, 702 S.W.2d 629 (Tex.Crim.App.1986); *Enard v. State*, 764 S.W.2d 574 (Tex.App.—Houston [14th Dist.] 1989, no writ). At some point it evidently became clear to Mr. Rios that the best strategy was to have the appellant plead guilty and throw himself on the mercy of the trial court. To this end, Mr. Rios had appellant submit several urinalysis test results showing that appellant was not an addict or user of illegal drugs.

Mr. Rios helped to draft letters of reference from appellant's foreman, and from appellant's father, although Mr. Rios had wanted live testimony from these men but was told that Mr. Culver and the foreman could not adjust their respective schedules to accommodate the court date. Mr. Rios qualified the appellant for probation during the sentencing hearing and directed the trial court's attention to the very positive pre-sentence investigation report which included the letters of reference mentioned above. The trial strategy adopted, and the efforts made by Mr. Rios in attempting to carry that strategy to a successful conclusion were reasonable in light of the totality of the circumstances.

Appellant would have us believe that his communication with Mr. Rios was limited to brief discussions that took place outside the courtroom only moments before any scheduled appearance. Furthermore, it is purported that no matter what was discussed nor for how long, Mr. Rios always represented to the appellant that he would get probation. Therefore, appellant claims to have been misled by Mr. Rios into pleading guilty. This alleged ineffective assistance was not done in bad faith as appellant explained in the hearing on his Motion for New Trial:

Q. And did you believe that Mr. Rios believed that you would get probation if you plead guilty?
A. Yes, I did.
Q. And to this day, David, do you believe that Mr. Rios in good faith actually believed you would get probation where he told you that you would?
A. Yes, I thought he thought I would get probation.
Q. You still believe that he thought that?
A. Oh, yes, I do.

Later, on cross-examination, the appellant was confronted with two questions that seem to shed great light on appellant's mental processes:

Q. Let me make sure I understand you. You said you thought that you would get probation. You said he told you that you would get probation for sure?
A. Yes, ma'am.
Q. But you still realized that there was a possibility that the Judge could sentence you to the penitentiary?
A. Yes, ma'am.

The facts in the instant case are very similar to the ones presented in *West, supra*, cited above. In *West, supra,* the Court of Criminal Appeals stated: "We find the general rule for this type of case stated correctly in *Wellnitz v. Page*, 420 F.2d 935 (10th Cir.1970), as follows:

'... an attorney may offer his client a prediction, based upon his experience or instinct, of the sentence possibilities the accused should weigh in determining upon a plea. An erroneous sentence estimate by defense counsel does not render a plea involuntary.... And a defendant's erroneous expectation, based on his attorney's erroneous estimate, likewise does not render a plea involuntary.'" *West*, 702 S.W.2d at 633.

Applying the *Strickland–Butler* standard of "totality of the representation" as well as the above language taken from *West, supra*, and *Wellnitz, supra*, this Court does not find that defense counsel's advice concerning the strong likelihood of probation nor defense counsel's case preparation and investigation was outside the range of competence demanded of attorneys in criminal cases. Appellant's only ground of error is overruled, and his conviction is affirmed.

AFFIRMED.

BURGESS, Justice, concurring.

I reluctantly concur. Appellate counsel, in oral submission, advanced a further criticism of trial counsel's representation. That was the decision to elect to have the judge assess punishment. While it is ultimately an accused's decision to waive trial by jury at either or both stages in a criminal proceeding, that accused must rely upon his counsel for competent advice in making that critical decision.

Appellate counsel suggested that this defendant was rendered ineffective assistance by his trial counsel because trial counsel had never handled a felony case in Montgomery County and did not know the attitude or "track record" of the trial judge in these types of offenses. Appellate counsel raises a valid point. How can an attorney assist the client in making an informed decision if the attorney has not garnered all the relevant facts? Certainly knowing the attitude and previous "track record" of the judge is crucial in determining whether to waive a jury.

The record reflects trial counsel admitted he made no check or study on Montgomery County judges in general or the trial judge in particular. Appellate counsel suggested that if such an inquiry had been made, it would have shown that the trial judge would have been unlikely to grant probation, much less deferred adjudication. However, the record is silent in this regard.

If appellant's counsel had advanced this theory in his brief and produced evidence in support of this theory, then this concurrence would likely be a dissent. Because he did not, I must concur.