**Affirmed and Memorandum Opinion filed January 10, 2012.**



In The

# Fourteenth Court of Appeals

NO. 14-09-00665-CR

**HILTON EARL ROGERS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 248th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1163748**

## M E M O R A N D U M   O P I N I O N

Appellant Hilton Earl Rogers pleaded guilty to engaging in organized criminal activity, and the trial court sentenced him to confinement for seven years. The trial court denied appellant's motion for new trial, and this appeal ensued. We affirm.

### BACKGROUND

Appellant was indicted for engaging in organized crime by delivering a prescription or prescription forms for a controlled substance without a valid medical purpose during the course of professional practice. Appellant pleaded guilty without an agreed recommendation as to punishment, and the trial court reset the case for a pre-

sentence investigation and punishment hearing.  At the conclusion of the punishment hearing, the trial court adjudicated appellant guilty and sentenced him to confinement for seven years.

Appellant appealed, and we held that appellant improperly was denied counsel during the time period for filing a motion for new trial.  We abated the appeal to allow an opportunity for appellant to file a motion for new trial with the assistance of counsel. Appellant filed a motion for new trial.   After a hearing, appellant's motion was denied.

Appellant argues in three issues that the trial court should have granted his motion for new trial based on his arguments that (1) his plea to the trial court was involuntary; and (2) the trial court erroneously failed to consider appellant's request for deferred adjudication at the punishment hearing.  We consider appellant's issues out of order.

## ANALYSIS

We review the trial court's denial of a motion for new trial for an abuse of discretion.  *Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007).  We view the evidence in the light most favorable to the trial court's ruling and uphold the ruling if it is within the zone of reasonable disagreement.  *Id.*  We do not substitute our judgment for that of the trial court, but instead decide whether the trial court's decision was arbitrary or unreasonable.  *Id.*  Thus, a trial court abuses its discretion by denying a motion for new trial only when no reasonable view of the record could support the trial court's ruling.  *Id.* At a hearing on a motion for new trial, the trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony.  *Alexander v. State*, 282 S.W.3d 701, 706 (Tex. App.—Houston [14th Dist.] 2009, pet. filed).

With these standards in mind, we turn to appellant's issues on appeal.

## I.     Consideration of Deferred Adjudication

Appellant urges in his second issue that the trial court should have granted his motion for new trial based on his argument that the trial court "erred by finding [appellant] guilty on the day of his plea, thereby eliminating the availability of deferred

adjudication at the [punishment] hearing, and thus failing to consider the full range of punishment." Appellant's argument is based on a typed, unsigned docket sheet notation stating that the trial court "found [appellant] guilty" after receiving his plea at the plea hearing, and "reset the case" for a pre-sentence investigation and punishment hearing.

"[A]fter receiving a plea of guilty or plea of nolo contendere, hearing the evidence, and finding that it substantiates the defendant's guilt," the trial court may "defer further proceedings without entering an adjudication of guilt, and place the defendant on community supervision." TEX. CODE. CRIM. PROC. art. 42.12, § 5(a) (West Supp. 2011). Contrary to appellant's assertion, the trial court did not "eliminat[e] the availability of deferred adjudication" until it adjudicated appellant guilty by signing the judgment after the punishment hearing. *See West v. State*, 702 S.W.2d 629, 634–35 (Tex. Crim. App. 1986) (trial court was not divested of authority to consider deferred adjudication based on oral finding of guilt that was pronounced at plea hearing but not entered into judgment until after punishment hearing); *Myers v. State*, No. C14-87-00930-CR, 1988 WL 114066, at *1 (Tex. App.—Houston [14th Dist.] Oct. 27, 1988, pet. ref'd) (not designated for publication) (same). Appellant cites no authority for the proposition that the trial court's alleged finding at the plea hearing constitutes an adjudication of guilt within the meaning of the article 42.12.

Nothing in the record indicates that the trial court refused to consider deferred adjudication before or during the punishment hearing. In fact, the trial court explained at the motion for new trial hearing that, pursuant to her standard procedures for plea hearings: "I see here that [appellant] had a prior, so I tell them, I see you have a prior conviction. I have given people deferred who have prior convictions. I have done that, but I have also given people prison sentences. . . . So you understand you could receive anywhere from deferred adjudication to a prison sentence of the maximum. Do you understand that? And they answer me."

We conclude that the trial court did not abuse its discretion by denying appellant's motion for new trial based on his argument that the alleged finding at the plea hearing

constituted a preemptory rejection of appellant's request for deferred adjudication. *See Webb*, 232 S.W.3d at 112. We overrule appellant's second issue.

## II. Voluntariness of Plea

Appellant argues in his first and third issues on appeal that his plea was involuntary because (1) "there was no affirmative showing on the record that he made [his plea] knowingly, voluntarily, and intelligently," as required by *Boykin v. Alabama*, 395 U.S. 238 (1990); and (2) the trial court failed to properly admonish appellant under Texas Code of Criminal Procedure article 26.13 as to the applicable range of punishment for his offense. Appellant asserts that the trial court erred in denying appellant's motion for new trial based on these arguments.

### A. Waiver of Constitutional Rights under *Boykin*

A guilty plea must be entered into voluntarily and freely. *See Houston v. State*, 201 S.W.3d 212, 217 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (citing TEX. CRIM. PROC. CODE ANN. art. 26.13(b) (Vernon Supp. 2005), and *Anderson v. State*, 182 S.W.3d 914, 921 n.1 (Tex. Crim. App. 2006) (Hervey, J., concurring)); *see also Boykin*, 395 U.S. 242–43. We must examine the entire record when considering the voluntariness of a guilty plea. *Houston*, 201 S.W.3d at 217 (citing *Martinez v. State*, 981 S.W.2d 195, 197 (Tex. Crim. App. 1998) (per curiam)).

When a defendant pleads guilty and thereby waives certain constitutional rights, due process of law requires that the record affirmatively show that the defendant had "a full understanding of what the plea connotes and of its consequence." *Boykin*, 395 U.S. at 243–44 (addressing waiver of federal constitutional right to a jury trial, right to confront one's accusers, and privilege against self incrimination); *see Gardner v. State*, 164 S.W.3d 393, 398–99 (Tex. Crim. App. 2005). Failure to make an "adequate" record showing that the plea was "intelligent and voluntary" constitutes constitutional error, and requires an outright reversal of the defendant's conviction without any analysis of whether the defendant's guilty plea was, in fact, intelligent and voluntary. *Aguirre-Mata*

*v. State*, 125 S.W.3d 473, 475 (Tex. Crim. App. 2003) (citing *Boykin*, 395 U.S. at 243–44); *see also Gardner*, 164 S.W.3d at 399–400 (finding that record adequately showed appellant's understanding of plea and its consequences based on inferences drawn from trial counsel's statements about defendant's choice to testify during punishment phase and evidence that appellant's plea was part of a strategy to seek probation).

Although there is no transcript of appellant's plea hearing, the clerk's record contains a "Waiver of Constitutional Rights, Agreement to Stipulate and Judicial Confession" signed by appellant. The waiver states: "In open court and prior to entering my plea, I waive the right of trial by jury. I also waive the appearance, confrontation, and cross-examination of witnesses, and my right against self-incrimination." The waiver—which is also signed by appellant's trial counsel, counsel for the State, and the trial court—and the trial court's judgment state that the trial court admonished appellant of the consequences of his plea "as required by law." The record also includes a document containing written admonishments given by the trial court, in which appellant initialed a statement that he has read and understands the written admonishments as well as his signed waiver. The trial court "ascertained that [appellant] entered [the plea] knowingly and voluntarily after discussing the case with his attorney."

Appellant's trial counsel testified at the motion for new trial hearing: "The Judge . . . explained everything to [appellant], just like we did when I write it all down on those plea papers, I went over everything [in the plea papers] with him word for word before I get them to sign it. The Judge does the same thing. . . . He understood the plea papers. . . . I know he understands it."[1] The trial court stated: "I want to put on the

---

[1] The written admonishments include two paragraphs in which appellant represents that he (1) waives his right to appeal; and (2) does not want the probation department to prepare a pre-sentence investigation report, and gives up any right to have such a report prepared. Appellant points out that (1) appellant's plea was not entered as part of a plea bargain, and therefore his right to appeal was not affected by his plea; and (2) the trial court ordered a pre-sentence investigation report to be prepared. Appellant argues the "discrepancy" between these events and appellant's representations suggests that "trial counsel failed to explain the representations and/or failed to explain that his plea entailed a [pre-sentence investigation] report." We disagree that the inclusion of these paragraphs necessitates a conclusion that neither appellant's trial counsel nor the trial court explained any of the written representations, admonishments, or waivers to appellant.

5

record that I did find [trial counsel] to be credible, and what the appellate court could not hear is how solid and firm he is in knowing what he said, because he has a standard practice every time, which is what I do on [pre-sentence investigations], and I make it very clear. . . . [W]e do have people who do not understand it. But this is not the case [here]." Viewing the record in the light most favorable to the trial court's ruling and giving due deference to the trial court's credibility determinations, we conclude that the trial court properly could have determined that the record affirmatively shows appellant had "a full understanding of what the plea connotes and of its consequence" with respect to a waiver of his constitutional rights. *See Boykin*, 395 U.S. at 243–44; *Gardner*, 164 S.W.3d at 399–400; *see also Webb*, 232 S.W.3d at 112.

In spite of this showing, appellant argues that the record nonetheless "is replete with indications" that appellant did not understand the "nature" or "consequences" of his plea" in other respects. He argues that these misunderstandings gave the trial court notice "that the plea was not knowingly, intelligently or voluntarily made." Assuming without deciding that these alleged misunderstandings affect our analysis of whether the record shows appellant had "a full understanding of what the plea connotes and of its consequence" with respect to a waiver of his constitutional rights, we turn to each of appellant's arguments.

### 1. Nature of Appellant's Plea

Appellant first argues that he intended to enter a plea of *nolo contendere* instead of a plea of guilty, and that the record reflects his confusion about the plea actually entered. Specifically, appellant argues the record contains the following alleged discrepancies supporting his argument: (1) the trial court's written admonishments include a handwritten notation striking out the word "guilty" on the second page of the document and replacing it with "no contest," although the word "guilty" appears in unedited form multiple times on the first and second pages of the document; (2) appellant's motion for community supervision does not state whether appellant pleads not guilty, guilty, or *nolo contendere*; (3) the trial court's judgment contains a handwritten notation by the clerk

6

striking out the originally-typed plea of "NOLO CONTENDERE" and replacing it with the word "guilty"; and (4) appellant stated in his pre-sentence investigation interview and testified at the punishment hearing that he intended to and did enter a plea of *nolo contendere*. Appellant argues that these discrepancies "indicate[] at the very least that there was confusion on the part of [appellant] about the nature of his plea and the record is silent as to whether the trial court questioned him regarding his understanding of to [sic] what he was pleading."

Appellant testified at the punishment hearing that he informed his attorney he wished to enter a plea of *nolo contendere*, but admitted that he personally gave his plea to the trial court at the plea hearing. At the hearing on appellant's motion for new trial, the trial court explained that if appellant had pleaded *nolo contendere* at the plea hearing instead of guilty, she would have stopped the proceedings to ensure that each document was edited to reflect the change. The trial court also explained that she initialed the signed statement in appellant's plea papers stating that "I committed [the charged] offense with [co-defendants] Lisa Reed and Craig Johnson," and that the trial court's initials indicate that she specifically inquired about appellant's decision to make this confession of guilt. The trial court stated that the originally-typed plea of "NOLO CONTENDERE" in the judgment was corrected in a manner that indicates a clerical error, not a change to appellant's plea.[2] Despite the unexplained handwritten notation on the written admonishments and appellant's statements to the contrary, the trial court stated: "I am comfortable in the fact that the defendant stood before me and said guilty. He did not say no contest."

We conclude on this record that the trial court properly could have determined appellant had no misunderstanding about the nature of his plea of guilty. *See Webb*, 232 S.W.3d at 112. We overrule appellant's issue based on this argument.

---

[2] The record reflects that one of appellant's co-defendants pleaded *nolo contendere* to the same charge and was sentenced on the same day at the same punishment hearing.

7

## 2.    Consequences of Appellant's Plea

Appellant also argues that the record reflects appellant's confusion about the consequences of his plea, in that he (1) misunderstood the difference between a plea of guilty and a plea of *nolo contendere*; and (2) erroneously believed he would have a "clean record" if the trial court granted his request for deferred adjudication and he successfully completed any community supervision requirements.

With respect to appellant's asserted misunderstanding as to the difference between a plea of *nolo contendere* and a plea of guilty, appellant's trial counsel testified at the motion for new trial hearing: "I explain to them what they're charged with, I ask them if they understand what they're charged with, how do you plead to the charge, guilty or not guilty." Appellant testified at the punishment hearing:

> A. Ma'am, I pleaded no contest
>
> Q. Well, you didn't, but in the event you pled no contest, what you're saying then—do you understand what a no contest plea means?
>
> A. That means I'm—I didn't say I was guilty.
>
> Q. What does it mean?
>
> A. That means I'm saying I wasn't guilty.
>
> Q. **So you believe you pled not guilty**?
>
> A. **No, ma'am**.   I understand that no contest means you're pleading not guilty[,] or **you're not saying you're either guilty or not guilty**.[3]

Despite appellant's difficulty in articulating the distinction, the trial court properly could have concluded that appellant's testimony reflects that he correctly understood the difference between a plea of *nolo contendere* and a plea of guilty. *See Brewster v. State*, 606 S.W.2d 325, 329 (Tex. Crim. App. 1980) (a defendant pleading *nolo contendere* neither admits nor disputes a charge; such a plea therefore is not technically a guilty plea

---

[3] Appellant argues that the fact he chose to maintain his innocence at the punishment hearing indicates that he failed to understand that a plea of *nolo contendere* does not have the same legal effect as a plea of not guilty.   However, we already have concluded that the trial court properly could have determined that appellant did not misunderstand that he entered a plea of guilty.   Accordingly, appellant's choice to maintain his innocence at the punishment hearing does not support appellant's argument because he made that choice in spite of a signed confession and a plea of guilty.

even though it has same legal effect). We overrule appellant's issue based on this argument.

With respect to appellant's claimed misunderstanding regarding the effect of deferred adjudication on his record, the trial court's written admonishments include a warning that "[i]f the Court defers finding you guilty and places you on community supervision . . . [t]he fact that you pled guilty and received community supervision will be public record, even if you successfully complete your probation." Appellant's trial counsel testified that he explained everything in the plea papers "word for word" to appellant, and that appellant "understood it." Although appellant testified at the motion for new trial hearing that he nonetheless believed he could have "got it off my record" through successfully-completed deferred adjudication community supervision requirements, the trial court had discretion to believe appellant's trial counsel's testimony and conclude that appellant received and understood correct information regarding the effect of deferred adjudication. *See Alexander*, 282 S.W.3d at 706. We overrule appellant's issue based on this argument.

We overrule appellant's first issue.

## B.     Admonishments under Article 26.13

Appellant argues in his third issue that the trial court erred in denying his motion for new trial because the trial court failed to properly admonish appellant under Texas Code of Criminal Procedure article 26.13 as to the applicable range of punishment for his offense. *See* TEX. CODE CRIM. PROC. art. 26.13 (West 2011) (prior to accepting a plea of guilty or *nolo contendere*, trial court shall admonish defendant of, among other things, range of punishment attached to offense).

The trial court's written admonishments include a statement that "[t]he punishment range for the crime to which you are pleading guilty is confinement . . . in prison for 2y–20 years TDCJ and a fine of up to $10,000." At the hearing on appellant's motion for new trial, the trial court also explained her procedure for orally admonishing

9

defendants as to the availability of deferred adjudication and the applicable range of punishment before accepting a plea of guilty. The trial court stated: "I know that that is how this plea was done, because that is how I always do my [pre-sentence investigation] pleas."

Appellant does not argue that these admonishments were not given, or that the stated range is incorrect. Appellant argues that the trial court's admonishments regarding the availability of deferred adjudication did not comply with article 26.13 because the trial court did not admonish appellant during the plea hearing that the trial court had already rejected the possibility of granting appellant's request for deferred adjudication. Because we have concluded that the trial court did not reject that possibility until it adjudicated appellant guilty at the end of the punishment hearing, we also hold the trial court did not abuse its discretion by denying appellant's motion for new trial based on this related argument. *See Webb*, 232 S.W.3d at 112.

We overrule appellant's third issue.

## CONCLUSION

Having overruled appellant's issues on appeal, we affirm the trial court's judgment.

/s/    Sharon McCally
       Justice

Panel consists of Chief Justice Hedges and Justices Seymore and McCally.

Do Not Publish — TEX. R. APP. P. 47.2(b).

10