

## NUMBER 13-07-00645-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI ‑ EDINBURG

REYMUNDO GARCIA PEREZ,                                  **Appellant,**

**v.**

THE STATE OF TEXAS,                                         **Appellee.**

### On appeal from the 24th District Court
### of Calhoun County, Texas.

## MEMORANDUM OPINION

### Before Justices Rodriguez, Garza, and Vela
### Memorandum Opinion by Justice Rodriguez

Appellant, Reymundo Garcia Perez, appeals from his conviction for the offense of delivery of more than four grams but less than 200 grams of a controlled substance (cocaine), a first degree felony. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(d) (Vernon 2003). After Perez entered a plea of guilty, the trial court found him guilty and

conducted a punishment hearing. At the conclusion of the punishment hearing, the trial court sentenced Perez to twenty years' confinement in the Institutional Division of the Texas Department of Criminal Justice (ID-TDCJ) and assessed a $10,000 fine and court costs. Perez filed a motion for new trial asserting ineffective assistance of counsel. After conducting a hearing on the motion, the trial court denied Perez's motion.

Perez complains by the following issues that his trial counsel was ineffective because: (1) counsel was not knowledgeable with respect to whether Perez was eligible for deferred adjudication; (2) Perez's plea of guilty was not knowingly and voluntarily entered given counsel's misrepresentation regarding deferred adjudication; and (3) counsel did not represent Perez zealously. Perez argues that because of counsel's alleged ineffective assistance, the trial court erred in denying his motion for new trial. We affirm.

## I. Background

### A. Plea Hearing

On October 7, 2007, after calling the case to trial, Perez acknowledged to the court that he had read and discussed with counsel a plea memorandum, a certification of his right to appeal, and a judicial confession, all of which were admitted into evidence without objection. Also admitted as exhibits were copies of Perez's offense reports, photographs of the scene of the offense, the back seat of the car involved in the offense, a red gift bag, cocaine on a scale, a lock blade knife, and a car rental sheet. In open court, the trial court admonished Perez of the punishment range of five to ninety-nine years and a fine not to exceed $10,000, after which Perez pleaded guilty to the offense of delivery of a controlled substance as alleged in the indictment. Perez stated that he did so because the allegations were true and correct. He also stated that he was pleading guilty freely and

2

voluntarily, knowingly and intelligently. Based on the evidence presented and on his plea of guilty, the trial court found Perez guilty of the charged offense and set sentencing for that afternoon.

## B. Punishment Hearing

### 1. Captain Matsis's Testimony

At the punishment hearing, Ed Matsis, a captain with the Port Lavaca Police Department, testified that he began working with the department in 2003 and that this was the largest cocaine delivery case—a little less than four-and-a-half ounces—he had seen since he began working there. Capt. Matsis also testified that he talked briefly with Perez after his arrest and asked Perez whether he was associated with a gang known as the Hermanos Pistoleros (HPL). Capt. Matsis explained that "[Perez] indicated that he was not representing now, which to [Capt. Matsis] meant that he wasn't evidencing tattoos or actively participating in gang activity." On cross-examination, Capt. Matsis testified that, although the records he researched were not comprehensive, he found nothing in his research of gangs indicating Perez that was a member of HPL.

### 2. Detective Keil's Testimony

Donald Keil, a detective with the Port Lavaca Police Department and lead detective on the case, testified that "a cocaine transaction [was] set up between [an informant] and [Perez] . . . ." Detective Keil was told that the informant and co-defendant Matthew Ramirez discussed the amount to be delivered and the cost. At some point, the informant told Ramirez that he could not make it to the delivery site and would instead be sending his "cousin Gordo" who was actually Officer Richard Cordova, an undercover police officer with the City of Port Lavaca. Detective Keil testified that Ramirez contacted Officer

3

Cordova to change the location of the delivery. Ramirez was the driver of the car used the night the drugs were delivered. Perez was a passenger in the back seat of the car. Found in the car were an open lock blade knife recovered from the backseat floorboard and a car rental agreement showing that Perez had rented the car earlier that evening. Detective Keil identified State's exhibit 11 as the baggie of cocaine that was recovered at the scene.

According to Detective Keil, Officer Cordova notified him of the time and location of the transaction. After some surveillance, Detective Keil testified that he gave the order to move in and effect the arrest. Perez ran from the scene; Detective Keil gave chase. He saw Perez drop a baggie of cocaine in the middle of a driveway. He also saw Perez drop a reddish-colored gift bag. After chasing Perez for approximately one block, Detective Keil approached Perez and told him to get down on the ground. Perez complied.

On cross-examination, Detective Keil testified that he had not examined the knife for fingerprints and had not observed Perez with a knife in his possession. When Detective Keil was asked who, in his opinion, was controlling the delivery, he answered that he was not sure. It was his "understanding . . . Ramirez was providing the information to Officer Cordova on the location of where the delivery was going to occur" and that it was Ramirez who had negotiated with the informant.

### 3. Officer Cordova's Testimony

The State called Officer Cordova to testify. Officer Cordova confirmed that he was cooperating with an informant. He also stated that his contact was with Ramirez and not with Perez before the night in question. However, as he parked his car that night, Ramirez and Perez approached in a rental car. Ramirez got out of the rental car and conversed briefly with Officer Cordova, telling him to get into the back seat of the rental car. Perez,

4

who was sitting in the back seat, had a red bag and pointed to it. Officer Cordova interpreted this to mean that Perez had the cocaine in the bag. Officer Cordova carried with him $2,250 with which to purchase the drugs. Perez questioned the amount, and Officer Cordova began counting the money. Officer Cordova testified that, at this point, Perez looked up and "saw headlights coming through the front windshield of the car and he told . . . Ramirez to go, go, go." Perez grabbed the red bag and attempted to flee. Officer Cordova took the money and pulled Ramirez away from the gearshift so that he would not put the car in drive. Only after this did Officer Cordova see the knife.

On cross examination, Officer Cordova agreed that he was talking with Ramirez in negotiating this deal, and it was not until he approached the vehicle that he met Perez. Ramirez directed Officer Cordova to Perez. He had not had any conversation with Perez prior to that time.

Perez did not testify at the punishment hearing.

### 4. Closing Arguments

During closing argument, the State asked for a sentence of twenty years based on: (1) Perez's two prior felony convictions; (2) the large delivery of cocaine with which Perez was involved; (3) Perez's prior gang involvement; (4) the presence of a knife in the car Perez rented; and (5) Perez's appearance as the director of the activity. The State also argued incorrectly that Perez was not "eligible for deferred probation." *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 5(a) (Vernon Supp. 2008) (setting out eligibility for deferred adjudication). Perez's counsel did not object to this misstatement of law.

During his closing argument, Perez's counsel argued for deferred adjudication as a reasonable alternative. He supported this position by arguing that Perez did not have a

5

long criminal history and had not engaged in criminal activity for the past six years. Counsel also urged that Perez admitted his responsibility and accepted his mistake. Counsel argued that Ramirez, not Perez, directed the activity. According to counsel, Perez fled the scene, as any one would do in this situation, but did not take the weapon that was found in the car. He did not resist when he was ordered to get down on the ground. Counsel also informed the court that Perez was employed and had a family to support. In summary, counsel argued that:

> [d]eferred adjudication is not something that is an easy way out on these kinds of matters. This is an individual who would be at the Court's discretion looking at up to ten years on deferred adjudication, and if he messes up, the Court has the full range of punishment. And this being a first[-]degree felony, these matters have been discussed with this Defendant and yet he's asking the Court to consider that range of punishment and all of the facts and circumstances in this case.

In response, the State again argued that it did not believe that Perez was "eligible for deferred probation or any kind of probation with his prior record, and he's already pled guilty. You'd have to allow him to withdraw his guilty plea and place him on deferred, and he's not eligible for it, nor does he deserve it." Again, counsel did not object.

After hearing closing arguments, the trial court imposed a sentence of twenty years' confinement, as requested by the State.

### C. Motion for New Trial Hearing

### 1. Perez's Testimony

At the hearing on his motion for new trial, Perez testified that he entered a plea of guilty upon counsel's advice. Perez further testified that counsel told him that "if [he] went before the judge that [he] would have a possibility of receiving deferred adjudication by entering a guilty plea." He also stated that deferred adjudication was explained to him as

6

follows: "That the judge would implement the deferred adjudication to me if I went before him. That's what he was trying to tell me." Perez's understanding of deferred adjudication was that he would not go to ID-TDCJ, but that he would be under community supervision, a form of probation.[1] Perez testified that, on the day of trial, he had the discussion with his counsel, during which time counsel advised him that he would be eligible for deferred adjudication.

Perez also testified that counsel had not asked him about any witnesses, had not subpoenaed any witnesses, and had not filed any motions, including motions to suppress. According to Perez, counsel spoke to him only on the days he was scheduled for court; the trial had been rescheduled approximately four or five times. Although Perez asked to meet with counsel outside of the courthouse, they had been unable to do so.

Perez asked counsel about deferred adjudication because that was what he wanted to receive. According to Perez, counsel advised him that he would have to go before the judge, not a jury, in order to receive deferred adjudication. According to Perez, based on the advice of counsel, he decided to go before the trial court to ask for mercy and for deferred adjudication. Perez stated that he would not have entered a plea of guilty if he had known that he was not going to receive deferred adjudication.

On cross-examination, Perez acknowledged that he had been offered, but turned down, a plea agreement under which he would have served eight years in prison. Perez denied, however, being offered and turning down a fifteen-year plea bargain. Perez agreed that he was never offered probation of any kind but stated that he was told that he "could" receive it. Perez also agreed that he entered an open plea to the court.

---

[1]We note that Perez pleaded guilty to the offense of unlawful possession of marihuana in November 2000. Adjudication was deferred, and he was placed on community supervision for that offense.

7

## 2. Counsel's Testimony

At the hearing on the motion for new trial, Perez's trial counsel testified that he requested deferred adjudication because Perez asked him to do so. After reviewing the plea hearing transcript, counsel stated that he had asked for probation and deferred adjudication as alternative sentences.

Counsel recalled that they were set for trial and that Perez decided he wanted to enter an open guilty plea and let the court decide punishment. Counsel denied having told Perez he could try to get deferred adjudication. Rather, counsel testified that he did not recommend that Perez enter an open guilty plea in an attempt to get deferred adjudication. Counsel told Perez what he believed would be the result of entering an open guilty plea to the court. Counsel did not believe that he ever told Perez that he was eligible for deferred adjudication. When asked whether Perez was, in fact, eligible for deferred adjudication, counsel responded, "No, he was not." Counsel explained that he asked the trial court for deferred adjudication because, based on his experience, defendants often persist in asking counsel to do things for them and the only way to maintain a record of what was done is to ask for it rather than face a grievance committee hearing.

Counsel testified that he and Perez had talked about probation eligibility many times as they approached trial. Counsel had extensive talks with the district attorney about the possibility of an alternative to a long prison term for Perez. Counsel asked the district attorney for probation but never for deferred adjudication. Perez knew that counsel was asking for probation.

According to counsel, Perez started demanding that he ask the judge for deferred adjudication after the plea was entered, not before—between the morning hearing where

8

the plea was entered and the afternoon sentencing hearing. When it was brought to counsel's attention that he had earlier testified that Perez said he would plead guilty in return for counsel asking for deferred adjudication, counsel said that he misspoke because that was not the way he understood the questioning.[2] Counsel testified that, in fact, Perez did not say he would plead guilty if counsel asked the court for deferred adjudication.

On cross-examination, counsel agreed that Perez had refused two previous plea bargain offers of eight years and fifteen years. The State had never offered Perez probation due to his prior felony conviction.

Counsel testified that he did not subpoena witnesses or file a motion to suppress Perez's gang activity statement. The only information brought to the trial court's attention during the punishment hearing concerning the HPL were statements made by Perez while he was under custodial interrogation. Counsel acknowledged that Perez's statements regarding earlier HPL gang affiliation could have been suppressed because at the time the statements were made, Perez had not been read his *Miranda* rights. *See Miranda v. Arizona*, 384 U.S. 436, 469-70 (1966). Counsel explained that he did not do so because, at that time, he was working on a plea arrangement, and it was premature.

After hearing closing arguments, the trial court denied Perez's motion for new trial.

## II. Lack of Knowledge

---

[2]At the motion for rehearing, trial counsel earlier testified as follows:

Q:   Okay. I guess what I'm trying to figure out – and I understand your rationale and your reasoning – okay, but you stated that [Perez] wanted you to go ahead and ask for deferred adjudication; correct?

A:   Correct.

Q:   And he told you that he would go ahead and plead guilty if you asked him for – if you asked the Court for deferred; correct?

A:   As I recall, yes.

By his first issue, Perez generally contends that because counsel was not knowledgeable with respect to whether Perez was eligible for deferred adjudication, the trial court erred in denying Perez's motion for new trial.[3] It is undisputed that Perez was eligible for deferred adjudication pursuant to article 42, section 5(a) of the code of criminal procedure and that counsel testified, at the motion for new trial hearing, that Perez was not eligible. *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 5(a).

## A. Applicable Law and Standard of Review

> In order to prevail on a claim of ineffective assistance of counsel, Applicant must satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). First, he must show that counsel's performance was deficient. However, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Second, Applicant must show that he was prejudiced by counsel's deficient performance. To demonstrate prejudice, Applicant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In *Hill v. Lockhart*, the Supreme Court held that the *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. 474 U.S. 52, 58 (1985). In the context of a guilty plea, a defendant satisfies the prejudice requirement by showing that he would not have pleaded guilty and would have insisted on going to trial. *Id.* at 59.

*Ex parte Imoudu*, No. AP-75,964, 2009 Tex. Crim. App. LEXIS 730, at *5-7 (Tex. Crim. App. June 3, 2009). A reasonable probability is one sufficient to undermine confidence in the outcome of the proceedings. *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). This standard applies to claims of ineffective assistance of counsel in both the guilt-innocence phase and the punishment phase in non-capital trials. *Hernandez v. State*, 988 S.W.2d 770, 770 (Tex. Crim. App. 1999).

---

[3]In his first issue, Perez also asserts that he pleaded guilty only because counsel told him that he would receive deferred adjudication; thus counsel's assistance was ineffective. Because this assertion is inconsistent with the basic premise of his first issue—that counsel's belief that Perez was not eligible for deferred adjudication resulted in ineffective assistance—we will address it as part of Perez's second issue challenging the voluntariness of his plea. *See* TEX. R. APP. P. 47.1.

We may not speculate as to the reasons behind trial counsel's actions nor should we try to second guess trial counsel's tactical decisions which do not fall below the objective standard of reasonableness. *Young v. State*, 991 S.W.2d 835, 837-38 (Tex. Crim. App. 1999); *Bone v. State,* 77 S.W.3d 828, 833 (Tex. Crim. App. 2002) (reviewing defense counsel's representation with great deference and presuming his actions fell within the wide range of reasonable and professional assistance). An appellant has the burden of proving ineffective assistance of counsel by a preponderance of the evidence. *Thompson*, 9 S.W.3d at 814.

Article 42.12, section 5(a) of the code of criminal procedure provides for deferred adjudication, in pertinent part, as follows:

> Except as provided by Subsection (d) of this section,[4] when in the judge's opinion the best interest of society and the defendant will be served, the judge may, after receiving a plea of guilty or plea of nolo contendere, hearing the evidence, and finding that it substantiates the defendant's guilt, defer further proceedings without entering an adjudication of guilt, and place the defendant on community supervision.

TEX. CODE CRIM. PROC. ANN. art. 42.12, § 5(a). Further, the code of criminal procedure defines "judgment" as "the written declaration of the court signed by the trial judge and entered of record showing the conviction or acquittal of the defendant." *Id.* at art. 42.01 § 1 (Vernon 2006). An oral finding of guilt does not divest the trial court of its power to grant deferred adjudication. *See West v. State*, 702 S.W.2d 629, 634-35 (Tex. Crim. App. 1986). A defendant is eligible for deferred adjudication, a type of probation, until the point the trial court adjudges him guilty. *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 5(a); *West*, 702 S.W.2d at 634-35.

---

[4]It is undisputed that the exceptions listed in subsection (d) do not apply in this case. *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 5(a), (d) (Vernon Supp. 2008).

11

We review the trial court's denial of Perez's motion for new trial under the abuse of discretion standard, *Salazar v. State*, 38 S.W.3d 141, 148 (Tex. Crim. App. 2001), reviewing the evidence in the light most favorable to the trial court's ruling. *Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2009). We uphold the trial court's ruling if the ruling was not arbitrary and was within the zone of reasonable disagreement. *Id.* "A trial court abuses its discretion in denying a motion for new trial only when no reasonable view of the record could support the trial court's ruling." *Id.* (citing *Charles v. State*, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004)).

## B. Discussion

### 1. Counsel's Conduct During the Plea Hearing

Perez complains of the following non-actions of his counsel at the plea hearing: (1) counsel did not inform the court that Perez would be seeking deferred adjudication; and (2) counsel did not ask the court to defer a finding of guilt. Perez asserts that these failures resulted from counsel's lack of knowledge that Perez could have received deferred adjudication.

However, as Perez notes, the trial court entered no written declaration regarding Perez's guilt until the court signed its written judgment following the completion of the sentencing hearing. Therefore, the trial court's oral finding of guilty at Perez's plea hearing did not divest the court of its power to grant Perez deferred adjudication. *See West*, 702 S.W.2d at 634-35. The trial court could have set aside its finding at the conclusion of the punishment phase and placed Perez on deferred adjudication if it was the trial court's opinion that the best interest of society and the defendant would be served. *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 5. Thus, neither a statement during the plea hearing

12

informing the court that Perez would seek deferred adjudication nor a request that the trial court withhold a finding of guilt until after the punishment phase of trial was required. Because there is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, we cannot conclude that Perez has established deficient performance based on counsel's non-actions. The first prong of *Strickland* has not been satisfied on this basis. *See Strickland*, 466 U.S. at 694.

### 2. Counsel's Conduct During the Punishment Hearing

Perez further complains that his counsel did not forcefully advocate for deferred adjudication because he erroneously believed that Perez was not entitled to receive deferred adjudication. Although counsel asked the court to consider deferred adjudication during closing arguments, he did not object to the State's following responsive argument:

> First of all, I don't believe [Perez is] eligible for deferred probation or any kind of probation with his prior record, and he's already pled guilty. You'd have to allow him to withdraw his guilt plea and place him on deferred, and he's not eligible for it, nor does he deserve it.

The prosecutor incorrectly stated that he did not believe Perez was eligible for deferred probation and later stated that Perez was not eligible for it and did not deserve it. However, he also stated that Perez had pleaded guilty and that the court would have to allow withdrawal of his plea to place him on deferred adjudication. This last statement recognizes that Perez was, in fact, eligible for deferred adjudication. Therefore, although counsel's incorrect belief may have resulted in his decision not to object to the prosecutor's argument, the record does not support a conclusion that counsel's action fell outside of the wide range of reasonable professional assistance. *See Strickland*, 668 U.S. at 689.

Moreover, even were we to conclude counsel's performance was deficient in this regard, Perez has not shown "that there is a reasonable probability that, but for counsel's

13

unprofessional errors, the result of the proceeding would have been different." *Id*. Perez did not establish that, had counsel objected to the prosecutor's incorrect argument, the trial court would have deferred his adjudication. Perez was charged with a first degree felony. He had a prior conviction for the state jail felony offense of possession of marihuana and a prior conviction for driving while intoxicated. Based on Perez's testimony, he received a plea offer of eight years in prison, which he refused. Based on counsel's testimony, Perez also refused a plea offer of fifteen years. Deferred adjudication was never offered as part of a plea agreement.

In light of the foregoing, we cannot conclude that Perez has shown that there is a reasonable probability that, but for counsel's lack of knowledge regarding deferred adjudication and his alleged errors, if any, the trial court would have deferred his adjudication. We also note that, in the context of this guilty plea, the prejudice requirement could have been established if Perez had shown that he would not have pleaded guilty and would have insisted on going to trial. *See Hill*, 474 U.S. at 59. In this case, although Perez asserts that he would not have pleaded guilty, it is arguable only that Perez would have considered a plea bargain. Perez does not contend that he would have, instead, insisted on going to trial, and the record does not support that conclusion. Perez, therefore, has not satisfied the second prong of *Strickland* as to this argument. *See Strickland*, 466 U.S. at 694.

Thus, reviewing the evidence in the light most favorable to the trial court's ruling, we conclude that the trial court did not abuse its discretion in denying Perez's motion for new trial on these grounds. The trial court's ruling was not arbitrary and was within the zone of reasonable disagreement. *See Webb*, 232 S.W.3d at 112. Counsel's conduct fell within

14

the wide range of reasonable professional assistance and did not prejudice Perez. *See Salazar*, 38 S.W.3d at 148. Accordingly, we overrule Perez's first issue.

### III. Voluntariness of Plea

By his second issue, Perez contends that the trial court abused its discretion in denying his motion for new trial because his guilty plea was not knowingly and involuntarily entered. Perez complains that his trial counsel induced him to plead guilty by leading him to believe he would receive deferred adjudication probation. Because this issue is based on a premise inconsistent with that raised in his first issue, we review it as an alternative argument.

### A. Applicable Law and Standard of Review

A prima facie showing that a guilty plea was made voluntarily and knowingly is established when the record indicates that the trial court properly admonished the defendant. *Labib v. State*, 239 S.W.3d 322, 332 (Tex. App.–Houston [1st Dist.] 2007, no pet.) (citing *Martinez v. State*, 981 S.W.2d 195, 197 (Tex. Crim. App. 1998) (per curiam); *Arreola v. State*, 207 S.W.3d 387, 391 (Tex. App.–Houston [1st Dist.] 2006, no pet.)). When a prima facie showing is presented by the record, the burden on appeal shifts to the defendant to show that his plea was involuntary. *Id.* (citing *Edwards v. State*, 921 S.W.2d 477, 479 (Tex. App.–Houston [1st Dist.] 1996, no pet.)).

"[A] guilty plea is not voluntary if made as a result of ineffective assistance of counsel, because it does not represent an informed choice." *Id.* (citing *Ex parte Burns*, 601 S.W.2d 370, 372 (Tex. Crim. App. 1980) (en banc)). "[M]isinformation concerning a matter, such as probation, about which a defendant is not constitutionally or statutorily entitled to be informed, may render a guilty plea involuntary if the defendant shows his

15

guilty plea was actually induced by the misinformation." *Brown v. State*, 943 S.W.2d 35, 42 (Tex. Crim. App. 1997) (citing *Harrison v. State*, 688 S.W.2d 497, 499-500 (Tex. Crim. App. 1985) (en banc)).  To find a plea was involuntary, the record must contain confirmation of the misinformation by counsel or documents augmenting defendant's testimony that reveal the misinformation and show its conveyance to the defendant.  *Ex parte Griffin*, 679 S.W.2d 15, 17-18 (Tex. Crim. App. 1984) (en banc); *Fimberg v. State*, 922 S.W.2d 205, 207 (Tex. App.–Houston [1st Dist.] 1996, pet. ref'd).

Because Perez is challenging the voluntariness of his plea, we examine the record as a whole.  *See Williams v. State*, 522 S.W.2d 483, 485 (Tex. Crim. App. 1975); *Fimberg*, 922 S.W.2d at 207.  We review the trial court's denial of Perez's motion for new trial under the abuse of discretion standard.  *Salazar*, 38 S.W.3d at 148.

## B.  Discussion

At the motion for new trial hearing, Perez testified that he entered a plea of guilty because his counsel told him that, if he went before the judge, he would have a possibility of receiving deferred adjudication by entering a guilty plea.  This alleged advice from counsel, however, is a correct representation of a "potential" outcome of a guilty plea.  We cannot conclude that this testimony supports Perez's contention that counsel told him he *would* receive deferred adjudication.  When asked how deferred adjudication was explained to him, Perez testified "that the judge would implement the deferred adjudication if I went before him.  That's what he was trying to tell me."  This testimony, however, supports only Perez's belief or interpretation, not counsel's actual representation to him.  Finally, Perez testified that he and counsel did not discuss Perez's eligibility for deferred adjudication until the day of trial. Again, Perez's discussion with counsel regarding whether

16

Perez would be eligible for deferred adjudication, regardless of when it occurred, does not constitute a misrepresentation by counsel and does not support Perez's contention that counsel definitively told him that he *would receive* deferred adjudication. Nor do we find in the record, any documents augmenting Perez's testimony that reveal misinformation and show its conveyance to Perez. *See Ex parte Griffin*, 679 S.W.2d 17-18; *Fimberg*, 922 S.W.2d at 207.

Indeed, counsel testified that he did not tell Perez that he was eligible for deferred adjudication. This is consistent with counsel's testimony that he believed, incorrectly, that Perez was not eligible for deferred adjudication. As previously discussed, counsel testified that, before the plea hearing, he counseled Perez regarding the entry of his plea and discussed probation with Perez and the prosecutor's office but did not advise Perez that he would receive deferred adjudication if he pleaded guilty. Counsel testified that deferred adjudication was not discussed until after the plea was entered, and it was Perez who asked counsel to request it. Counsel stated that he asked the trial court for deferred adjudication because Perez instructed him to do so.

Examining the entire record, we conclude that Perez did not prove by a preponderance of the evidence that counsel conveyed misinformation to him. *See Ex parte Griffin*, 679 S.W.2d at 17-18; *Fimberg*, 922 S.W.2d at 207. Nor did Perez establish that his guilty plea was actually induced by misinformation. *See Brown*, 943 S.W.2d at 42. If counsel did advise Perez regarding deferred adjudication, the advice was only that Perez was eligible for deferred adjudication if he pleaded guilty, which would not be misinformation. In fact, the record reveals that counsel did not provide such advice but that Perez asked counsel to request deferred adjudication. Because it is undisputed that the

17

trial court properly admonished Perez, the burden shifted to Perez to show that he entered his plea involuntarily. *See Labib*, 239 S.W.2d at 332. Perez did not meet his burden. Therefore, we cannot conclude that Perez's plea was not voluntary as a result of ineffective assistance of counsel. *See id.*

Nonetheless, Perez also argues by his second issue that, under the second prong of *Strickland*, but for counsel's ineffective assistance, the result would have been different. *See Strickland*, 466 U.S. at 694. Perez's co-defendant, Ramirez, accepted an offer of eight years' confinement. Perez, too, was presented with this offer. Perez asserts that because he believed that he would receive deferred adjudication, he declined the offer. Thus, it appears as if Perez is arguing that he would have, but for counsel's ineffective assistance, accepted the plea bargain. We find this argument unpersuasive, however, because Perez turned down the eight-year offer prior to the date of trial, and, based on our review of the record, Perez did not discuss deferred adjudication with counsel until the day of trial. Perez has not shown that there is a reasonable probability, but for counsel's alleged errors, if any, the result of the proceeding would have been different. Therefore, Perez has not established the second prong of *Strickland*. *See id.*

Thus, the trial court did not abuse its discretion in denying Perez's motion for new trial on the basis that his plea was not made knowingly and voluntarily. *See Webb*, 232 S.W.3d at 112. We overrule Perez's second issue.

### IV.  Zealous Representation

By his third issue, Perez claims that counsel did not represent him zealously, and therefore, the trial court erred in denying the motion for new trial.[5]

---

[5]Because, by this third issue, Perez is alleging additional instances of ineffective assistance of counsel, we will apply the law and standard of review set out in the first issue.

18

## A. Former Gang Affiliation

Perez contends that counsel was ineffective and did not zealously represent him when, at the punishment hearing, he failed to object to questions asked by the State and to closing argument comments made by the State regarding Perez's former gang involvement.[6]  In all criminal cases, however, after a finding of guilt, both parties may offer any evidence relevant to sentencing.  *Rivera v. State*, 123 S.W.3d 21, 30 (Tex. App.–Houston [1st Dist.] 2003, pet. ref'd).  This evidence may include the defendant's prior criminal record, character testimony, reputation testimony, or evidence of extraneous crimes or bad acts the defendant has been shown, beyond a reasonable doubt, to have committed.  *Id.*  And, "as a general matter, testimony regarding a defendant's affiliation with a gang may be relevant and admissible at the punishment phase to show the defendant's character."  *Garcia v. State*, 239 S.W.3d 862, 866-67 (Tex. App.–Houston [1st Dist.] 2007, pet. ref'd), *cert. denied*, 129 S. Ct. 505 (2008) (citing *Beasley v. State*, 902 S.W.2d 452, 456 (Tex. Crim. App. 1995) (en banc); *Anderson v. State*, 901 S.W.2d 946, 950 (Tex. Crim. App. 1995) (en banc); *Ho v. State*, 171 S.W.3d 295, 305 (Tex. App.–Houston [14th Dist.] 2005, pet. ref'd) ("Even if appellant was no longer affiliated with the gang at the time of the shooting, evidence that he was a gang member is relevant—and thus admissible at punishment—because it relates to his character.")).  Perez does not argue that this testimony was not relevant and not admissible at the punishment phase to show his character.  We cannot conclude that counsel's conduct did not fall within the wide range of reasonable professional assistance; therefore, Perez has not established the first prong of *Strickland* based on this argument.  *See Strickland*, 466 U.S. at 689.

---

[6]Perez also contends that counsel was ineffective and did not zealously represent him when he failed to file, earlier in the proceedings, a motion to suppress comments Perez made to the arresting officer regarding former gang involvement.  The same analysis applies to this contention.

19

## B.  State's Leading Questions

Perez next complains that counsel was ineffective because "[n]o objections were made to the obviously leading and suggestive questions asked by the State.  Almost every question was suggestive of the answer and the witness merely had to say yes or no.  In many instances, counsel never even objected to the hearsay nature of the answer."  However, the record from the motion for new trial hearing contains no evidence related to this complaint.  Without more in the record, we may not speculate as to the reasons behind counsel's actions nor should we try to second guess his tactical decisions which do not fall below the objective standard of reasonableness.  *See Young*, 991 S.W.2d at 837-38.  And, considering our highly deferential standard of review, we presume that counsel's actions fell within the wide range of reasonable and professional assistance.  *See Strickland*, 466 U.S. at 689; *Bone,* 77 S.W.3d at 833.  We conclude, therefore, that the first prong of *Strickland* has not been met on this basis.  *See Strickland*, 466 U.S. 689.

## C.  Cross-Examination

Perez further complains that counsel's cross-examination of the State's witnesses at the punishment hearing was "lackluster" and did nothing to assist Perez in his defense.  He specifically complains of counsel's failure to object to testimony and to cross-examine witnesses on testimony regarding the car rental contract, Perez's former gang affiliation, and the open lock blade knife.  Perez also contends that counsel failed to attempt to reduce the impact of this testimony when the State commented during closing argument that Perez was a "big-time" drug distributer.  We disagree.

On cross-examination, Capt. Matsis testified, in response to counsel's questioning, that he found nothing in his research that indicated Perez was a member of HPL.  This supports the defense position that Perez was not involved in gang activity.  On cross-

20

examination, Detective Keil testified that he had not tested the knife for fingerprints and had not observed Perez with a knife in his possession, suggesting that Perez did not handle the knife that evening and arguably did not own the knife. On cross-examination, Officer Cordova agreed that he had negotiated with Ramirez and that, on the night in question, he met Perez for the first time when Ramirez took him to the car. This supports Perez's position that Ramirez, not Perez, directed the drug transaction.

In addition, during closing argument, counsel argued that the trial court should consider that Perez did not have a long criminal history and had not been engaged in criminal activity for several years; that Perez admitted his responsibility and mistake; that Ramirez ran the deal; and that, although Perez had fled from the car, he did not take the weapon with him and after only a short chase, did not resist arrest. Counsel also informed the court that Perez was employed and had a family to support. Counsel urged the court to consider deferred adjudication as a reasonable alternative based on all the facts of the case.

We cannot conclude, under the first prong of *Strickland*, that counsel's performance was deficient on this basis. *See Strickland*, 466 U.S. at 689.

### D. Witnesses

Perez further complains of counsel's failure to ask Perez about witnesses or to subpoena any witnesses to provide testimony concerning Perez's background and personal history in support of a lesser sentence or deferred adjudication. We have, however, found nothing in the record detailing the potential testimony by any uncalled witness. *See Hernandez v. State*, 726 S.W.2d 53, 58 (Tex. Crim. App. 1986) (en banc) (holding that a failure to issue subpoenas before the day of the trial, even if it resulted in

21

witnesses not appearing, does not constitute ineffective assistance of counsel when there is nothing in the appellate record detailing the potential testimony).  Assertions of ineffective assistance of counsel must be firmly grounded in the record.  *Bone*, 77 S.W.3d at 834 (holding that trial counsel only calling a single witness and defendant at punishment phase did not constitute ineffective assistance of counsel where evidence of what additional witnesses would have testified to was not in record).  Defense counsel's decision to not submit evidence can be a strategic choice rather than a sign of ineffectiveness.  *See Ex parte Kunkle*, 852 S.W.2d 499, 506 (Tex. Crim. App. 1993) (en banc).  In this case, Perez does not show us what evidence should have been presented; thus, he has not overcome the presumption that counsel's conduct fell within the wide range of reasonable professional assistance.  *See Strickland*, 466 U.S. at 687; *Hernandez*, 726 S.W.2d at 58. Perez has not satisfied the first prong of *Strickland* in this instance.  *See Strickland*, 466 U.S. at 687.

From our review of the above complaints, we cannot conclude that Perez received ineffective representation.  Therefore, the trial court did not abuse its discretion when it denied Perez's motion for new trial.  *See Webb*, 232 S.W.3d at 112.  We overrule Perez's third issue.

## IV.  Conclusion

We affirm the judgment of the trial court.

NELDA V. RODRIGUEZ
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Memorandum Opinion delivered and
filed this 16th day of July, 2009.