Iosif **FIMBERG**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 01–94–01038–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Feb. 1, 1996.

Order Overruling Motion for
Rehearing April 11, 1996.

---

■■■■■■■■■■■

Cynthia Russell Henley, Houston, for appellant.

John B. Holmes Jr., Houston, Calvin Hartman, Houston, for appellee.

Before ANDELL, HUTSON–DUNN and O'CONNOR, JJ.

## OPINION

ANDELL, Justice.

In this appeal, we are asked to decide if a promise from counsel to defendant regarding punishment resulted in an involuntary plea of guilty. Appellant, Iosif Fimberg, pleaded guilty to attempted sexual assault[1] and was sentenced by the trial court to seven years in prison. In a sole point of error, appellant contends his plea of guilty was involuntary as a result of ineffective assistance of counsel. We affirm.

### Background

Appellant, a recent Russian emigre, worked as a janitor in Ben Taub Hospital. In certain areas of the hospital, he was intentionally watched by nurses and clerks when he was on the floor because of a general perception that his behavior was suspicious. On the day of the offense, he was seen going very quickly into the room of a comatose patient. A floor clerk watched appellant's movements in the patient's room via a closed-circuit television. In her statement to the police, the clerk testified she saw appellant pull down the patient's bed sheet and pull up her nightgown. The patient was not wearing underclothes and her genitals were exposed. The clerk saw appellant put one hand between the patient's legs and his other hand over her vaginal area. Appellant left the room about a minute later.

Appellant claims he was simply attempting to replace a torn glove by getting one from the nearest room. He says in the process of pulling out a fresh glove from the box, he accidentally dropped some gloves onto the patient, then picked them back up. He believes the charges against him resulted from a misunderstanding of these actions.

### Procedural History

Appellant originally hired Ernest Clouser to represent him. After Clouser was suspended from the practice of law and disbarred, his partner, Herschel Cashin, took over his criminal practice. Because appellant's command of English is very limited, an interpreter was used for all communications in and out of court. Cashin did very little to prepare for trial and did not conduct an independent investigation of the facts.

Cashin testified Judge Jones advised him on the day the cause was set for trial if a jury convicted appellant and recommended probation, the judge would assess jail time. Cashin conveyed this information to appellant. In response, appellant attempted to accept a previous offer of deferred adjudication, but this attempt was rejected by the State. Appellant testified Cashin promised him he would be assessed probation without jail time if he were to plead guilty.

Based on this alleged promise, appellant pleaded guilty without an agreed recommendation on punishment but asked for a different judge to impose sentence. A presentence investigation report (PSI) was prepared. About nine months later, on the day sentence was to be imposed, appellant attempted to change his plea to not guilty, but the trial court refused to permit the change. The judge sentenced appellant to seven years in prison. Appellant moved for a new trial based on ineffective assistance of counsel resulting in an involuntary plea of guilty. After a hearing, the trial court denied the motion.

### Standard of Review

■ To reverse a conviction based on ineffective assistance of counsel, the appellate court must find: (1) counsel's representation fell below an objective standard of reason-

1. TEX. PENAL CODE ANN. §§ 15.01, 22.011 (Vernon 1994).

ableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 695, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984). This standard applies to challenges to guilty pleas. *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985). To satisfy the second prong of the test enunciated in *Strickland*, appellant must show there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty, but would instead have insisted on going to trial. *Id.*

 An involuntary guilty plea must be set aside. *Boykin v. Alabama*, 395 U.S. 238, 244, 89 S.Ct. 1709, 1713, 23 L.Ed.2d 274 (1969); *Williams v. State*, 522 S.W.2d 483, 485 (Tex.Crim.App.1975). To determine if a plea is voluntary, we consider the record as a whole. *Williams*, 522 S.W.2d at 485. If counsel conveys erroneous information to a defendant, a plea of guilty based on that misinformation is involuntary. *Ex parte Griffin*, 679 S.W.2d 15, 17 (Tex.Crim.App. 1984); *McGuire v. State*, 617 S.W.2d 259, 261 (Tex.Crim.App.1981).

### Review of the Record

The following evidence was presented at the hearing on appellant's motion for new trial:

(1) Cashin did not prepare for trial. He did not interview the hospital witnesses, take or review photos, interview the man who wrote out appellant's statement to Ben Taub officials, contact or subpoena character witnesses, or meaningfully address appellant's lack of fluency in English.

(2) The prosecuting attorneys said Cashin was unusually nervous and seemed unready for trial.

(3) Cashin admitted he did not want to try the case; he thought it was a "tough set of facts" and wanted appellant to plead guilty.

(4) Neither Clouser nor Cashin responded on time to the State's offer of five years deferred adjudication, originally made March 19, 1993. After subpoenas were issued, this offer was marked out in the file with an "X" and a note was written in the margin that the offer was withdrawn. The file was continuously available to Cashin until the day of trial. When appellant attempted to accept the offer on the day of trial, the State informed Cashin the offer had been withdrawn.

(5) Cashin said Judge Jones, in the presence of one of the prosecutors, either Dean Blumrosen or Richard Moore, told him if appellant went to trial, and the jury convicted him and recommended probation, the court would assess jail time. Blumrosen and Moore both denied hearing Judge Jones say this.

(6) Cashin informed appellant of Judge Jones's statement about imposing jail time. Appellant and his son both testified when Cashin conveyed this alleged statement by Judge Jones to them, it influenced appellant's decision to plead guilty.

(7) Appellant and his son both testified Cashin assured appellant he would not go to jail if he pleaded guilty. Appellant also testified about Cashin's assurance during the earlier sentencing hearing at which he attempted to change his plea.

(8) Cashin specifically denied assuring appellant he would not go to jail, saying, "I couldn't give him my assurance that he wouldn't go to jail, it's up to the Judge on PSI to give him punishment, whatever [the] Judge sees fit."

(9) Cashin testified appellant had an interpreter and understood what he was doing. Cashin claimed there was nothing involuntary about appellant's plea.

(10) The plea papers signed by appellant state he freely and voluntarily pleaded guilty.

(11) Appellant testified at the plea hearing his plea of guilty was freely and voluntarily made and no promises had been made to him by anyone.

(12) Appellant testified at the sentencing hearing he had lied under oath about whether any promises had been made to him regarding his sentence.

(13) In response to being asked at the hearing on his motion for new trial if his plea was voluntary, appellant answered, "Yes."

## Involuntary Plea of Guilty

■ A plea of guilty based on misinformation is involuntary. *Boykin*, 395 U.S. at 244, 89 S.Ct. at 1713. To apply a standard requiring us to show but for counsel's error appellant would not have pleaded guilty, this Court must make a threshold determination that counsel erroneously advised appellant. In evaluating the record and assessing the contradictory testimony, we have kept in mind the problems unique to a defendant utterly unfamiliar with the American system of justice, who was raised in a country where the attorney-client relationship may radically differ from our own. Appellant's fluency in English is very limited and the record does not show anyone other than appellant's son and translator spoke Russian. The language barrier unquestionably intensified appellant's dependence on his attorney. Despite appellant's own testimony that his plea was freely entered, we are inclined to believe he may have misunderstood the process and his obligations. Nevertheless, we are unable to conclude appellant's plea was involuntary.

The testimony shows appellant's plea was influenced by two statements: (1) the trial court would impose jail time if appellant went to trial, was found guilty, and the jury assessed probation, and (2) appellant would not go to jail if he pleaded guilty. Cashin testified Judge Jones made the first statement about imposing jail time and acknowledged conveying it to appellant. No one heard the judge make this remark, but that is immaterial. This statement, whatever its source, is not misinformation. The judge would have been able to impose jail time as a condition of probation, and could announce his willingness to do so. Because Cashin was conveying accurate information to appellant, not misinformation, we cannot consider a plea based on it to be involuntary.

■ As to the second statement, although appellant and his son both testified Cashin promised appellant he would not serve time if he pleaded guilty, Cashin flatly denied making such a promise. The second statement would qualify as misinformation, but there is nothing in the record to confirm whether this promise was made. By highlighting Cashin's seeming unpreparedness

and unwillingness to try the case, appellant attempts to provide a motive for Cashin to misinform him. This does not solve the dilemma we face when confronted with two completely contradictory statements. There is no corroborating evidence other than the testimony of appellant's son, who was acting as an interpreter. However exceptional the circumstances, a defendant's claim he was misinformed by counsel, standing alone, is not enough for us to hold his plea was involuntary. In cases in which a guilty plea has been held to have been involuntary, the record contains confirmation of the misinformation by counsel, or documents augmenting the defendant's testimony that reveal the misinformation and show its conveyance to the defendant. *See, e.g., Griffin*, 679 S.W.2d at 15; *McGuire*, 617 S.W.2d at 259; *Ex Parte Burns*, 601 S.W.2d 370, 372 (Tex.Crim. App.1980); *State v. Hartman*, 810 S.W.2d 22, 22 (Tex.App.—Beaumont 1991, no pet.); *Murphy v. State*, 663 S.W.2d 604, 610 (Tex. App.—Houston [1st Dist.] 1983, no pet.). The judge who presided at the hearing on the motion for a new trial was able to evaluate the credibility of the witnesses, and denied the motion. We are not in a position to disturb that ruling absent an abuse of discretion. *Montoya v. State*, 872 S.W.2d 24, 25 (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd). Given this, and faced with the absence of independent corroborating evidence in the record indicating appellant was misinformed, we hold appellant's plea of guilty was voluntary. Therefore, the first prong of the *Strickland* test has not been satisfied. Accordingly, we overrule appellant's point of error.

We affirm the judgment of the trial court.

O'CONNOR, Justice, dissenting on rehearing.

I dissent. We should grant rehearing to examine the underlying premise to the majority's opinion—that a trial judge can threaten jail time if a defendant insists on his right to a jury trial instead of pleading guilty.

The appellant is a recent Russian emigre who speaks only broken English and whose only translator was his son, another Russian

emigre. The appellant contends that his lawyer was ineffective. He says his plea of guilty was involuntary because it was based on misinformation received from his lawyer. I agree with the appellant.

Cashin, the appellant's lawyer, did nothing in preparation for trial. The litany of the things Cashin failed to do is long.[1] In short, he did nothing at all, including discussing the case with the appellant.

On the day of trial, because Cashin was not prepared for trial, he told the appellant to accept an offer of the State. Cashin was so ignorant about the case that he did not know that the State's offer had been withdrawn. Once Cashin realized the offer was no longer available, he had two options: he could proceed with the trial (for which he was completely unprepared and would surely be found ineffective on appeal) or he could persuade his client to plead guilty.

The only way Cashin could persuade the appellant to plead guilty was to tell him that the judge said if the appellant insisted on going to trial, the judge would sentence him to prison; and, the only way to avoid prison was to plead guilty. Both Cashin and the appellant testified at the motion for new trial hearing that Cashin told the appellant the judge said he would impose jail time if the appellant went to trial. Although other discussions between Cashin and the appellant were disputed, that one is not.

The majority holds that the statement Cashin made to the appellant as an inducement to plead guilty was not misinformation; that the trial court was within his rights to make such a statement. Thus, the majority reasons, when Cashin told the appellant the judge threatened jail time if the appellant went to trial, Cashin was not repeating anything that was impermissible because the judge could have properly made such a statement. The majority cites no authority to support the statement that a judge can threaten the appellant with jail if the appellant insists on a jury trial.

I disagree with the majority's statement that a judge could properly make such a statement. A judge cannot threaten to impose jail time if the defendant exercises his right to a jury trial. For example, in *Cleaveland v. State*, 507 S.W.2d 769, 769–70 (Tex. Crim.App.1974), the Court of Criminal Appeals held that it was improper to threaten to impose a harsher punishment if the defendant was going to appeal. A judge cannot put a price on a jury trial.

A judge cannot make a pre-commitment to punishment. *Jefferson v. State*, 803 S.W.2d 470, 472 (Tex.App.—Dallas 1991, no pet.) (judge cannot assess a promised punishment to maintain his credibility). That is what Cashin told the appellant the judge did in this case. Worse, Cashin coupled the pre-commitment to jail-time to the appellant's right to a jury trial.

I would hold the appellant's plea of guilty was based on misinformation and, thus, was involuntary. *Boykin v. Alabama*, 395 U.S. 238, 244, 89 S.Ct. 1709, 1713, 23 L.Ed.2d 274 (1969); *Ex parte Griffin*, 679 S.W.2d 15, 17 (Tex.Crim.App.1984); *McGuire v. State*, 617 S.W.2d 259, 261 (Tex.Crim.App.1981).

I would reverse.

---

1. The appellant's lawyer did not:
 1. Discuss with the appellant whether he would testify at trial.
 2. Discuss the content of the appellant's testimony.
 3. Ask for names of character witnesses.
 4. Discuss the procedure for trial; how a jury was selected; the burden of proof; how witnesses are examined and cross-examined.
 5. Contact Maudlin about the appellant's statement at the hospital.
 6. Discuss with the appellant his statement to the hospital.
 7. Meet with the appellant, except at the courthouse.
 8. Call the appellant on the telephone.
 9. Go to the hospital to view the scene of the crime.
 10. Discuss courtroom etiquette with the appellant.