**Affirmed and Memorandum Opinion filed April 14, 2015.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-14-00337-CR

---

### JOHN HUGHES HILL, JR., Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 212th District Court**
**Galveston County, Texas**
**Trial Court Cause No. 13CR0095**

---

## M E M O R A N D U M   O P I N I O N

Appellant John Hughes Hill, Jr. appeals his conviction for aggravated assault with a deadly weapon. *See* Tex. Penal Code Ann. § 22.02(a)(2) (West 2011). In a single issue he claims he received ineffective assistance of counsel. We affirm.

### BACKGROUND

After being admonished by the trial court appellant entered a guilty plea to the offense of aggravated assault with a deadly weapon. The trial court accepted

appellant's plea and ordered a presentence investigation (PSI) report prepared.

The complainant, Corey Sonnier, testified during the punishment hearing. Prior to explaining what occurred on the date of the offense, the complainant admitted having previously been convicted of unauthorized use of a motor vehicle, aggravated assault with a deadly weapon, manufacture and delivery of a controlled substance, possession of a controlled substance, evading arrest, assault causing bodily injury to a family member, and felony criminal mischief. On the night of the offense, the complainant stopped at a convenience store to get a snack. While he was in the store, appellant walked in and greeted the complainant. When the complainant was attempting to drive away he put his car in reverse and hit another vehicle in the parking lot. The occupants of the car were appellant's mother and brother. The complainant argued with the occupants of the vehicle over who was at fault, and asked them whether they wanted to call the police about the accident, but they declined. The complainant determined that the damage was minimal, and turned to get back in his car to leave. As he walked back to his car, he heard four shots fired, felt one hit him in the back, and another shot hit him in the arm.

Appellant's mother, Angela Owens, testified that she was driving the vehicle involved in the accident with the complainant. She did not want to call the police because she did not have insurance and she had been drinking prior to the accident. She testified that the complainant cursed at her, but agreed the damage was minimal. Prior to walking back to his vehicle, the complainant told appellant and his mother, "Hold on, I've got something for you, m***r f***s." Owens considered the complainant's statement a threat, and thought he was going to his vehicle to retrieve a weapon. Owens did not see appellant fire the gun, but heard the shots.

A video of appellant's statement was played at the hearing. In the video,

appellant admitted he was the person who shot the complainant. Appellant stated he was afraid he would be incarcerated for trying to defend himself. On the night of the offense appellant was driving his wife's car, and picked up his sister from the Texas City Jail. Appellant and his sister subsequently picked up Diane, his sister's mother-in-law, who wanted to go to the store. Appellant went into the store, purchased a beer, and walked out to the parking lot. Appellant's mother drove into the parking lot, and appellant's sister got out of his car to go to her mother's car. Appellant described the argument that occurred after the complainant backed into appellant's mother's car. Appellant heard the complainant say, "I've got something for y'all's ass." At that time appellant said he grabbed his wife's gun from the car. Appellant shot the gun three times pointing toward the ground. When they heard the complainant say he had been hit, appellant's sister and her mother-in-law encouraged appellant to drive away from the store and "get off the street." Appellant did not see the complainant with a gun, but claimed he had heard the complainant had a reputation for violence. Appellant admitted he did not know what the complainant planned to retrieve from his car.

While taking appellant's statement, officers reviewed the store's parking lot surveillance video with appellant. The surveillance video revealed that the complainant was getting out of his car at almost the same time appellant reached for the gun in his wife's car. The only time the complainant walked back to the driver's side of his truck was after he had been shot. The surveillance video did not show a confrontation between the complainant and appellant's mother prior to appellant retrieving the gun from his wife's car. Appellant admitted that he was mistaken about the time he retrieved the gun from his wife's car. After questioning, appellant also admitted he did not hear of the complainant's reputation for violence until after he shot the complainant.

3

Appellant's mother and wife testified at the punishment hearing. His mother stated that appellant was not justified in shooting the complainant, she never saw the complainant with a weapon, but that she wanted the court to give appellant probation because he has a family. Appellant's wife also stated she wanted appellant to receive probation and appellant was sorry the incident happened.

Appellant also testified at the punishment hearing. He stated that the complainant appeared angry after the vehicle accident in the parking lot. Appellant testified that the complainant was angry and that he shot the complainant because of the way the complainant treated his mother. However, appellant also said that when he fired the gun he was not trying to shoot the complainant; he intended to fire a warning shot.

At the conclusion of the hearing the trial court sentenced appellant to confinement for twelve years in the Institutional Division of the Texas Department of Criminal Justice.

### INEFFECTIVE-ASSISTANCE-OF-COUNSEL CLAIM

In his sole issue, appellant contends that he received ineffective assistance of counsel because his trial counsel did not assert a claim of self-defense or defense of a third person on appellant's behalf. Both the United States and Texas Constitutions guarantee an accused the right to assistance of counsel. U.S. Const. amend. VI; Tex. Const. art. I, § 10; see also Tex. Code Crim. Proc. Ann. art. 1.051 (West Supp. 2014). This right necessarily includes the right to reasonably effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To prevail on an ineffective-assistance claim, the appellant must show that (1) counsel's performance was deficient by falling below an objective standard of reasonableness, and (2) there is a probability, sufficient to undermine confidence in the outcome, but for counsel's unprofessional errors, the result of the proceeding

4

would have been different. *Cannon v. State*, 252 S.W.3d 342, 348–49 (Tex. Crim. App. 2008).

We indulge a strong presumption that counsel's actions fell within the wide range of reasonable professional behavior and were motivated by sound trial strategy. *Strickland*, 466 U.S. at 689; *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). To overcome this presumption, an appellant's claim of ineffective assistance of counsel must be firmly demonstrated in the record. *Thompson*, 9 S.W.3d at 814. In most cases, direct appeal is an inadequate vehicle for raising such a claim because the record is generally undeveloped and cannot adequately reflect the motives behind trial counsel's actions. *Rylander v. State*, 101 S.W.3d 107, 110–11 (Tex. Crim. App. 2003); *Thompson*, 9 S.W.3d at 813–14. When the record is silent regarding trial counsel's strategy, we will not find deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005).

The right to reasonably effective assistance of counsel applies to the defendant's entry of a guilty plea. *Ex parte Morrow*, 952 S.W.2d 530, 536 (Tex. Crim. App. 1997). When a defendant enters a plea and later challenges the voluntariness of that plea based on ineffective assistance of counsel, the voluntariness of the plea depends on (1) whether counsel's advice was within the range of competence demanded of attorneys in criminal cases and, if not, (2) whether there is a reasonable probability that, but for counsel's error, the defendant would not have pleaded guilty and would have insisted on going to trial. *Id*.

Due process requires that each defendant who pleads guilty does so with a full understanding of the charges against him and the consequences of his plea. *Basham v. State*, 608 S.W.2d 677, 678 (Tex. Crim. App. 1980). A record that

5

indicates the defendant was duly admonished before entering a guilty plea presents a prima facie showing the plea was both knowing and voluntary. *Martinez v. State*, 981 S.W.2d 195, 197 (Tex. Crim. App. 1998).

Misinformation concerning a matter about which a defendant is not constitutionally or statutorily entitled to be informed, may render a guilty plea involuntary if the defendant shows that his guilty plea was actually induced by the misinformation. *Brown v. State*, 943 S.W.2d 35, 42 (Tex. Crim. App. 1997). However, "a defendant's claim he was misinformed by counsel, standing alone, is not enough for us to hold his plea was involuntary." *Fimberg v. State*, 922 S.W.2d 205, 208 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd). A claim of ineffective assistance of counsel must be affirmatively supported by the record. *See Jackson v. State*, 973 S.W.2d 954, 955 (Tex. Crim. App. 1998). Therefore, in determining the voluntariness of a guilty plea, the court should examine the record as a whole. *See Martinez v. State*, 981 S.W.2d 195, 197 (Tex. Crim. App. 1998). The review should focus specifically on the conduct of trial counsel. *See Kemp v. State*, 892 S.W.2d 112, 115 (Tex. App.—Houston [1st Dist.] 1994 pet. ref'd). The record is best developed in the context of an evidentiary hearing on application for writ of habeas corpus or motion for new trial. *Tabora v. State*, 14 S.W.3d 332, 336 (Tex. App.—Houston [14th Dist.] 2000, no pet.).

Appellant acknowledges that he signed the trial court's admonishments that he understood the charge against him and the appropriate range of punishment for the charged offense was two to twenty years' confinement and a possible fine not to exceed $10,000. Appellant also signed the plea form, stating "I give up all right to a jury in this case under Art. 1.13 C.C.P., and I give up my right to appearance, confrontation and cross examination of witnesses as to guilt under Art. 1.15 C.C.P., and as to punishment."

6

Appellant contends, however, that the record reflects his trial counsel "waived his right to have a judge or jury consider the issue of guilt or innocence, which the transcript shows was a real issue given Appellant's claims that he acted in defense of himself and his family[.]" At the plea hearing, the following exchange between the trial court and appellant occurred:

> THE COURT: You've had plenty of time to discuss this with your attorney, you're satisfied with your attorney's representations to you and y'all's discussions about the possible outcomes in this case?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Do you want to ask him about that?
>
> MS. OTT [prosecutor]: Mr. Hill, have you had an opportunity to look over [the plea agreement] and discuss it with your attorney?
>
> THE DEFENDANT: Yes, ma'am.
>
> MS. OTT: Is this your signature on the second page indicating a guilty plea?
>
> THE DEFENDANT: Yes, ma'am.
>
> MS. OTT: Did you sign it freely and voluntarily?
>
> THE DEFENDANT: Yes, ma'am.
>
> MS. OTT: You haven't been threatened or coerced in any way to sign this document?
>
> THE DEFENDANT: No.
>
> MS. OTT: Offer this document.
>
> THE COURT: Any objection?
>
> MR. LAVALLE [defense counsel]: No, Your Honor, no objection.
>
> THE COURT: Mr. Hughes [sic], at the bottom of this document, the admonishments and waivers, it says, "Open plea, the court to decide punishment at a later date," and that's what you want to do?
>
> THE DEFENDANT: Yes, I would.
>
> MR. LAVALLE: Yes, sir.
>
> THE COURT: And to get to that point, you want to waive your right to trial by jury; is that right?

7

THE DEFENDANT: Right.

THE COURT: And you want to waive your right to cross-examine the witnesses against you; is that correct?

THE DEFENDANT: Correct.

THE COURT: You've discussed all of these issues, your constitutional rights and waiver of those with your attorney?

THE DEFENDANT: Yes.

The plea papers in the record also reflect that the trial court admonished appellant, among other things, that he had been accused of aggravated assault with a deadly weapon; he was pleading guilty to that offense, and the range of punishment was two to twenty years' confinement and a fine of up to $10,000. We presume that recitals in court documents are correct unless the record affirmatively shows otherwise. *Breazeale v. State*, 683 S.W.2d 446, 450 (Tex. Crim. App. 1984).

Appellant argues that his guilty plea was involuntary because his counsel did not advise him of the right to assert self-defense and defense of a third person in a jury trial. Appellant contends that had counsel properly advised him while he was considering his plea he would have chosen to have either the judge or a jury decide whether his shooting of the complainant was committed in the reasonable belief that it was necessary to defend himself or his family members. Appellant argues that the complainant was aggressive and that he had heard of the complainant's violent reputation, which was evidenced at the hearing by the complainant's extensive criminal record. Appellant did not make this complaint in a motion for new trial, nor has he filed a habeas corpus petition.

The record is silent as to the reasoning and strategy behind counsel's action or inaction; accordingly, appellant has not rebutted the strong presumption that counsel exercised reasonable professional judgment. *See Thompson*, 9 S.W.3d at 814. On this record, appellant has failed to prove that his trial counsel failed to

render effective assistance. *See Rodriguez v. State*, 425 S.W.3d 655, 668–69 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (court cannot speculate when record is silent as to discussions appellant and his attorney had regarding appellant's choice to plead guilty). We overrule appellant's sole issue.

We affirm the trial court's judgment.


/s/    Sharon McCally
Justice


Panel consists of Chief Justice Frost and Justices Boyce and McCally.
Do Not Publish — Tex. R. App. P. 47.2(b).

9