**Opinion issued January 7, 2016**



In The

# Court of Appeals

For The

## First District of Texas

_____

### NO. 01-14-00659-CR

_____

**JASON CLIFFORD CONWAY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 262nd District Court**
**Harris County, Texas**
**Trial Court Case No. 1424502**

---

## MEMORANDUM OPINION

This is an appeal from a guilty plea. Appellant contends that (1) the trial court abused its discretion in denying his motion for new trial and refusing to hold a live evidentiary hearing on that motion, and (2) his guilty plea was involuntary due to ineffective assistance of counsel. We affirm.

# BACKGROUND

Appellant was charged with the felony offense of assault of a family member, second offense, enhanced by two prior felony convictions.

## A.     The Guilty Plea and Sentencing

Before jury selection began on April 30, 2014, the State announced on the record the last plea offer that was rejected by appellant the previous day:

> The State yesterday, prior to beginning the trial, offered to drop both felony enhancement paragraphs, taking the case from a minimum of 25 years to the two-year to ten-year range and allowing the Defendant to plead to you openly in that range. The Defendant was admonished to that and rejected that.

The trial court then explained to appellant, "We failed to put it on the record, but I just want to make sure the record is clear that the State has a plea-bargain process to reduce the case to a third-degree felony and they're going to give you an opportunity, if you choose to, to plead to the Court without an agreed recommendation, meaning that I could sentence you within that range of punishment, from a minimum of two up to a maximum of ten years for this offense."  Appellant stated that he understood the plea offer.

Appellant and his attorney, Ms. Wallace, conferred, and appellant's counsel then asked the court, "Well, we want to see if the Court will entertain the two to ten plea still, the PSI."  The court stated that it would "accept the plea if that's what

you want to do" and indicated it would keep the jury pool while the parties made a

final decision and handled the associated paperwork.

When the parties reconvened before the court, the defendant was questioned

about the voluntariness of the guilty plea and admonished of the consequences:

> THE COURT: This is Cause No. 1408885, The State of Texas vs. Jason Conway. Mr. Conway, you're charged by indictment with the offense of assault of a family member, second offense because the State is abandoning language; is that correct?
>
> MR. HANDLEY: That's correct, Your Honor.
>
> THE COURT: All right. How do you plead to that offense?
>
> THE DEFENDANT: Guilty.
>
> THE COURT: Are you pleading guilty because you are guilty and for no other reason?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Has anybody threatened you or coerced you in order to make you plead guilty?
>
> THE DEFENDANT: No, ma'am.
>
> THE COURT: You understand, of course, by pleading guilty, you are giving up your right to a jury trial?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Is that what you want to do?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: The State is moving to abandon both enhancement paragraphs, that does reduce the range of punishment in this case. It now becomes no less than two years or more than ten years in prison and a possible fine not to exceed $10,000. Do you understand that that is the range of punishment?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: This is without an agreed recommendation. You understand I can sentence you within that range of punishment?

THE DEFENDANT: Yes, ma'am.

THE COURT: And knowing that, do you still wish the Court to accept your plea?

THE DEFENDANT: Yes, ma'am.

THE COURT: All right. Are you a United States citizen?

THE DEFENDANT: Yes, ma'am.

THE COURT: Have you ever been treated for a mental illness?

THE DEFENDANT: No, ma'am.

THE COURT: You're represented in court today by Ms. Wallace, has she explained everything to you and answered all your questions?

THE DEFENDANT: Yes, ma'am.

THE COURT: Do you have any questions of me before we proceed further?

THE DEFENDANT: No.

THE COURT: Sir, even though you've pled guilty today, I still must have evidence to support that plea. I have before me what's been marked as State's Exhibit No. 1, when you signed this document, did you understand by signing it you're admitting to me that you're guilty of this offense?

THE DEFENDANT: Yes, ma'am.

THE COURT: And do we have your permission to use these documents as the evidence against you today?

THE DEFENDANT: Yes, ma'am

MR. HANDLEY: State offers State's 1, Your Honor.

THE COURT: Is there any objection?

MS. WALLACE: No objection, Your Honor.

THE COURT: There being no objection, State's Exhibit No. 1 is admitted.

THE COURT: Jason Conway, based on your plea of guilty and the evidence I have before me, I find that there is sufficient evidence to find you guilty. However, I will withhold a finding of guilt today. I am going to reset your case for sentencing . . . . Then we'll be back

4

here on June 19th for sentencing; and, of course, I've explained to your attorneys they can submit whatever letters of recommendation that they would like to send on your behalf. Again, the State would have the opportunity to do the same.

At the July 24, 2014 sentencing hearing, appellant indicated that he had fired his original attorney and new counsel was representing him. Appellant's counsel stated that she and appellant had reviewed the Pre-Sentence Investigation Report (PSIR). Neither the State nor appellant had objections or corrections to the report. That report contained information about appellant's lengthy criminal history, as well as written statements by, and notes from interviews with, appellant and the complainant. The court stated that it had read the PSIR, as well as character letters and photos submitted by appellant's family and members of the community.

During argument, the State requested that the court sentence appellant to 10 years' confinement, given the seriousness of the offense, the extensive past criminal history, and the wishes of the complainant. Appellant's counsel requested deferred adjudication, probation, or a two-year sentence. The court stated that either party could call live witnesses as well. Neither side did so. The court sentenced appellant to 10 years' confinement. Appellant filed a notice of appeal.

**B.     The Motion for New Trial and Request for Hearing**

Appellant was then determined by the trial court to be indigent, and new counsel was appointed. Appellant's new counsel filed a motion with this Court to abate and permission to file an out of time motion for new trial, as appellant "was

5

unrepresented during most of the 30 day period for filing a motion for new trial," leaving "inadequate time for appellant and [counsel] to review potential issues for presentation in a motion for new trial." We granted the motion.

Appellant filed a motion for new trial, through new counsel, Ms. Diggs, arguing as a "sole ground: involuntary plea due to coercion and ineffective assistance of counsel, as well as coercion by the trial court." Relying on appellant's unsworn declaration attached to the motion for new trial as evidence, the motion made the following claims:

- Repeated admonishments by the court on at least four occasions, in the face of the appellant's "assertions of innocence and his desire to go to trial, . . . eventually led him to feel that he had no choice but to plead guilty."

- Appellant's trial counsel "insisted he plead guilty despite his repeated assertions of innocence and his desire to go to trial."

- Appellant's trial counsel "gave erroneous advice that led to [his] involuntary plea, such as telling [appellant] that he could present text messages to him from the complainant during his PSI hearing and telling him that he could cross-examine the complainant during the PSI hearing."

- Appellant's trial counsel's waiver of the 10-day notice requirement for amending the indictment on trial day was against his wishes. According to appellant, the removal of the allegation in the indictment that he assaulted the complainant "by impeding breath" (leaving only the allegation that he assaulted appellant "by applying pressure" to her neck in the indictment), "prejudiced him by denying him the opportunity to subpoena and call the doctor who was not unwilling to testify for the State regarding the complainant's lack of physical injuries." Appellant thus felt he had no choice but to plead guilty.

6

- Appellant's trial counsel delivered a letter to appellant from appellants' parents asking him to plead guilty and not go to trial, which "too led to [appellant] feeling coerced and pressured to plead guilty."

- Appellant's trial counsel withheld from him that the doctor who examined the complainant would not be testifying for the State. And appellant's counsel admitted to appellant that "she withheld this information because she knew he would not have pled guilty if he had known that the doctor was not going to testify at trial."

Appellant's motion also request a hearing on the motion for new trial, asserting that "the matters raised in this motion will not be adequately apparent from the existing record."

On November 7, 2014, the trial court held a hearing on appellant's motion, but announced its intention to decide the motion on affidavits: "I think I've had an opportunity to review the Motion along with my memory of Mr. Conway's plea to the Court, if I recall correctly. Therefore, it is my intention to proceed by affidavit; and after reviewing the affidavits, if I believe there is additional information that needs to be provided and it can't be done through affidavits, then I'll allow you to have a live hearing." The court provided the parties a deadline of November 17, 2014 to provide additional affidavits.

On November 12, 2014, the State provided an affidavit from appellant's trial counsel, Ms. Wallace, who had withdrawn as his counsel before sentencing at appellant's request. The affidavit averred that appellant had refused before the day

7

of trial to plead guilty to anything more than a misdemeanor. It also responded to, and contradicted, several of appellant's assertions:

> The Assistant District Attorney sent an email giving notice of his intent to abandon the "impeding breath" part of the indictment and I discussed that with the Defendant. I shared with the Defendant that if the ADA dropped the "impeding breath" (choking) part including "by applying pressure" there would be no "manner and means" pled, but the ADA could just leave in "by applying pressure" and that would correct the problem. However, assault would be easier for the State to prove than choking. The Defendant agreed.

> It is my recollection that the Judge spoke to the Defendant once, not including the arraignment when the trial was starting. After the first conversation with the Defendant and after the State abandoned the "impeding breath," the Judge said if the Defendant wanted to plead to her on a PS1 with the punishment being locked in at 2-10 years (if the State agreed) then she would consider 8 years depending on what was shown in the PSI. I presented the option to the Defendant and he said no. During the arraignment when the trial was starting, the Defendant stated he wanted to plead guilty to the PSI. The Judge ordered the attorneys and the Defendant to step down to discuss the plea. We stepped down and after a brief discussion, the plea was entered. After the plea, when we were completing the PSI package, he asked if we could use the text messages to cross-examine the Complainant, so the Judge would hear all mitigating evidence. I said we would, but only if the Complainant was called as a witness by the State.

> Later when I called the parents of the Defendant to discuss the PSI, they told me they believed Jason had retained new counsel. I asked Jason and he confirmed. Attorney Kent Schaffer filed a Notice of Appearance on May 21, 2014. I filed a Motion to Withdraw on May 24, 2014. The Motion to Withdraw was granted on May 26, 2014. I was not the Defendant's attorney on July 24, 2014, the time of the PSI hearing. I never had any reason to believe the Doctor was not available to testify. I certainly did not tell the Defendant that I knew, prior to his plea that the Doctor was not available. On the day of trial, the ADA asked the Judge to have the Sheriff pick up the Doctor if the Doctor did not voluntarily appear. The Judge granted the request.

8

I never carried any written messages to the Defendant from his parents. I met with his parents every time we went to court and shared every offer with them, but they left the decision up to him. On the day of trial, I told them the twelve (12) years was still on the table and that Jason had rejected it.

The Defendant made the decision to plead guilty of his own free will and there was no coercion from anyone.

On December 19, 2014, the court again held a hearing. Appellant's counsel renewed her objection to the court's refusal to allow live testimony. The court overruled that objection. The court then stated that he had reviewed the appellant's and trial counsel's affidavits, and that it was exercising his discretion to decide the case on affidavits given that the court had the opportunity to observe everyone's demeanors at the pre-trial plea stage and at punishment. He granted appellant, however, a week to file additional affidavits.

On December 2, 2014, appellant filed a supplemental affidavit responding to Wallace's affidavit. It stated, in pertinent part:

First, in her affidavit Ms. Wallace denies telling me that she knew prior to my plea that the doctor was not available to testify. Ms. Wallace came to the jail the day after my plea and told me that the doctor was reluctant to show up to court. I took that literally to mean that the doctor was unavailable to testify. Even if the doctor was reluctant, and not completely unavailable, that is information that I find very important. Had I known that the doctor was reluctant to testify for the state I would never have pled guilty, I would have insisted on going to trial. The fact that the doctor who examined the complainant was reluctant to testify for the state only strengthens my defense. I believe that Ms. Wallace intentionally kept this information from me to keep me from going to trial.

9

Next, Ms. Wallace states that she never carried any written messages to me from my parents. This is false. Ms. Wallace handed me a note signed by my parents wherein my parents urged me to take a plea rather than go to trial. This note came after numerous conversations where Ms. Wallace repeatedly insisted that I take a plea because my minimum punishment if convicted at trial was 25 years TDCJ-ID and my parents would be dead by the time I served my time. I found this note to be very coercive. It was handed to me at a critical point in my decision making process. I was already worn down by the change in the indictment, the repeated admonishments by the court also urging me about the 25 year minimum I would face if convicted, and the continued urging by Ms. Wallace to plead guilty rather than go to trial. If she had not handed me that note I would not have pled guilty, instead I would have insisted on going forward with my trial.

I wanted a trial because I am not guilty, but Ms. Wallace insisted that I plead to a PSIH with a cap of 10 years TDCJ-DD. She never seemed to care about my assertions of innocence.

She never seemed interested in preparing a defense for my trial. Her focus was on convincing me to take a plea.

I do not believe that Ms. Wallace represented me as a lawyer should. I was pressured into taking a plea. I would like to have a trial in this case because I am not guilty of the charges against me.

On January 2, and again on January 5, appellant's mother, Maxine, filed unsworn declarations opining that appellant was coerced into pleading guilty by Wallace and the trial court. She stated that the trial court warned appellant more than once "about his range of punishment and suggested he should consider a guilty plea so as to not face the full range of punishment at trial." Maxine also stated that she heard Wallace tell appellant that if he went to trial and received the minimum 25-year sentence, his parents would be deceased by the time he was released, and that there was a chance he would die in prison, given the "life

10

expectancy in prison is low." Maxine stated that she and her husband sent a note to appellant through Wallace that said "The plea sounds good," because she "was scared about the possibility of never seeing my son outside of prison again."

On January 5, 2015, the trial court denied appellant's motion for new trial, and appellant appealed.

## ISSUES ON APPEAL

Appellant raises two issues here.

1. "The trial court abused its discretion in denying Appellant's motion for new trial and request for hearing on motion for new trial."

2. "Appellant's plea was involuntary due to ineffective assistance of counsel."

We first address appellant's argument that the trial court abused its discretion in denying his request for a hearing on his motion for new trial. We then address the trial court's denial of his motion for new trial and the voluntariness of his guilty plea together, as the voluntariness of his guilty plea was the only ground raised in his motion for new trial.

## HEARING ON MOTION FOR NEW TRIAL

Appellant argues that the trial court abused its discretion in denying his request for a hearing on a motion for new trial. He acknowledges that "the right to a hearing on a motion for new trial is not absolute," *Reyes v. State*, 849 S.W.2d 812, 815 (Tex. Crim. App. 1993), and that the trial court can receive evidence "by

11

affidavit or otherwise." TEX. R. APP. P. 21.7. Nonetheless, he contends that he was deprived of the opportunity to create a full record for meaningful appellate review.

### A. Applicable Law and Standard of Review

"The purposes of a new trial hearing are (1) to determine whether the case should be retried or (2) to complete the record for presenting issues on appeal." *Hobbs v. State*, 298 S.W.3d 193, 199 (Tex. Crim. App. 2009). We review the denial of a hearing on a motion for new trial for an abuse of discretion:

> Our review, however, is limited to the trial judge's determination of whether the defendant has raised grounds that are both undeterminable from the record and reasonable, meaning they could entitle the defendant to relief. This is because the trial judge's discretion extends only to deciding whether these two requirements are satisfied. If the trial judge finds that the defendant has met the criteria, he has no discretion to withhold a hearing. In fact, under such circumstances the trial judge abuses his discretion in failing to hold a hearing.

*Smith v. State*, 286 S.W.3d 333, 340 (Tex. Crim. App. 2009).

Such a hearing is not an absolute right, but a trial judge abuses his discretion in failing to hold a hearing if the motion and accompanying affidavits (1) raise matters which are not determinable from the record and (2) establish reasonable grounds showing that the defendant could potentially be entitled to relief. *Id*. This second requirement limits and prevents "fishing expeditions." *Id*.

12

**B. Analysis**

Appellant's argument is that a live evidentiary hearing was necessary because there were conflicting versions presented by the affidavits, and he wanted the opportunity to cross-examine his trial counsel. The Court of Criminal Appeals has held, on similar facts, that a live evidentiary hearing was not required, even in the face of conflicting affidavits:

> In this case, the affiants were the defendant and her trial counsel. They had already appeared in the trial court, where the trial on the plea of nolo contendere had been held, and the trial judge had already had an opportunity to evaluate the affiants. The court had received a pre-sentencing report about the offense and the defendant, and the judge was familiar with the history and facts of the case.
>
> . . . .
>
> We do not accept a *per se* rule that a trial court must hear live testimony whenever there is a factual dispute in affidavits and a party asks for testimony. Here we hold that, in this case, the trial court did not abuse its discretion by deciding the motion on the affidavits.

*Holden v. State*, 201 S.W.3d 761, 764 (Tex. Crim. App. 2006).

Here, the trial court was familiar with the case and parties from the pre-trial proceedings, the plea hearing, the PSIR, and the sentencing hearing. The court allowed the parties to file affidavits in support and in opposition of appellant's motion for new trial, and indicated that the court would allow the parties to present live testimony if it thought it was necessary after reviewing the affidavits. Ultimately, the court denied the motion for new trial without hearing live testimony.

Given the court's familiarity with the case and the contents of the affidavits and PSIR, appellant has not demonstrated that the trial court abused its discretion in denying his request to accept additional live evidence at the motion for new trial hearing. *Pacheco v. State*, No. 01-14-00156-CR, ___ S.W.3d __, ___, 2014 WL 6911023, at *2–3 (Tex. App.—Houston [1st Dist.] Dec. 9, 2014, no pet.) (trial court did not abuse discretion in denying motion for to present live testimony at motion for new trial hearing, despite contradictions in parties' affidavits). Specifically, he has not identified what is "not determinable from the record" and "reasonable grounds showing that [he] could potentially be entitled to relief." *Smith*, 286 S.W.3d at 340.

## VOLUNTARINESS OF GUILTY PLEA

Appellant next argues that the trial court should have granted his motion for new trial because his plea was "involuntary because of coercion, confusion, and unconstitutionally ineffective assistance of counsel." He asserts that "[b]ut for trial counsel's erroneous advice and pressure from the trial court, appellant would not have plead guilty to the felony charge of assault family member second offender, but would instead have insisted on going forward with his jury trial."

### A. APPLICABLE LAW AND STANDARD OF REVIEW

A guilty plea must be freely, knowingly, and voluntarily entered. TEX. CODE CRIM. PROC. ANN. art. 26.13(b) (West. 2009). A plea is involuntary when it is

"induced by threats, misrepresentations, or improper promises" by the prosecutor, judge, or law enforcement officials. *Rios v. State*, 377 S.W.3d 131, 136 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd).

"A record that indicates that the trial court properly admonished the defendant presents a prima facie showing that the guilty plea was made voluntarily and knowingly." *Arreola v. State*, 207 S.W.3d 387, 391 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (citing *Martinez v. State*, 981 S.W.2d 195, 197 (Tex. Crim. App.1998)). When the record presents a prima facie showing that the plea was voluntary and knowing, the burden shifts to the defendant to show that he entered the plea without understanding the consequences. *Edwards v. State*, 921 S.W.2d 477, 479 (Tex. App.—Houston [1st Dist.] 1996, no pet.). An accused who attests when he enters his plea of guilty that he understands the nature of his plea and that it is voluntary has a heavy burden on appeal to show that his plea was involuntary. *Id*; *Dusenberry v. State*, 915 S.W.2d 947, 949 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd).

In the context of a claim that the defendant's plea is involuntary due to ineffective assistance of counsel, the defendant must show (1) that counsel's advice was outside the range of competency demanded of attorneys in criminal cases and (2) that, but for counsel's erroneous advice, the defendant would not have pleaded guilty and would instead have gone to trial. *Ex parte Moody*, 991

15

S.W.2d 856, 857–58 (Tex. Crim. App. 1999). A plea of guilty based on erroneous information conveyed to the defendant by his trial counsel is involuntary. *Fimberg v. State*, 922 S.W.2d 205, 207 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd) (citing *Ex parte Griffin*, 679 S.W.2d 15, 17 (Tex. Crim. App.1984)). The court must first make a threshold determination that counsel erroneously and incompetently advised the appellant before the second factor concerning prejudice to the appellant is reached. *Id*. at 208. The defendant's uncorroborated testimony that he was misinformed by counsel is not sufficient to show that his plea was involuntary. *Id*.

When, as here, ineffective assistance of counsel is raised in a motion for new trial, we apply an abuse of discretion standard of review. *Schoenbauer v. State*, 85 S.W.3d 400, 402 (Tex. App.—Tyler 2002, no pet.) ("When the appellant has presented evidence on his counsel's alleged ineffectiveness at a hearing on a motion for new trial, we review the application of the test pronounced in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984), through the prism of an abuse of discretion standard."). We reverse only if the trial court's decision is arbitrary or unreasonable, viewing the evidence in the light most favorable to the ruling. *Charles v. State*, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004) (appropriate standard of review for ineffective assistance claim brought forth in motion for new trial is abuse of discretion).

**A. Claim of Coercion to Plead Guilty by the Trial Court**

Appellant first claims he was coerced by the trial court's admonishments to plead guilty. Specifically, he states that he averred in his motion for new trial affidavit that he "recalls being brought out of the hold over on at least four occasions for admonishments by the trial court." The record contains reference to two conversations between the trial court and appellant about the State's plea offers. Appellant does not contend that he was incorrectly admonished by the court as to the consequences of going to trial with a 25-year statutory minimum sentence if convicted as opposed to the two-to-ten year punishment range available if he accepted the State's plea deal.

Appellant cites no authority, and we have located none, for the proposition that the trial court's correctly admonishing an appellant as to the potential consequences and punishment ranges flowing from a plea bargain verses a trial amounts to coercion or renders a guilty plea involuntary. On this record, appellant has failed to carry his "heavy burden on appeal to show that his plea was involuntary" based on admonishments from the trial court. *Dusenberry*, 915 S.W.2d at 949.

**B. Claim of Coercion to Plead Guilty by Counsel**

Next appellant claims that he felt pressured by his counsel to plead guilty. Appellant contends he was coerced by his counsel's comment that if he did not

17

plead guilty, he would likely die in prison because life expectancies are low and the he would likely never see his parents again outside prison if convicted because the charges carried a minimum 25-year sentence.

For this Court to find counsel's admonishments about the length of prison time appellant potentially faced at trial and the potential ramifications of that rendered his guilty plea involuntary, we would have to make "a threshold determination that counsel erroneously advised appellant." *Fimberg*, 922 S.W.2d at 208. But, as with his coercion allegations about the trial court, appellant does not claim that his trial counsel gave him incorrect information about the consequences and punishment ranges flowing from a guilty plea versus trial; instead, he contends that his attorney's recommendation to plead guilty "lends credence to Appellant's declaration that his last minute plea was made out of duress after being coerced by all of the admonishments he received."

"A guilty plea is a matter of trial strategy." *Enard v. State*, 764 S.W.2d 574, 575 (Tex. App—Houston [14th Dist.] 1989, no pet.). "Defense counsel's unsuccessful strategy in advising a client to plead guilty will not render the plea unknowing or involuntary even though the defendant is sentenced to a greater sentence than expected." *Id*. (*citing West v. State*, 702 S.W.2d 629. 633 (Tex. Crim. App. 1986)). Here, the trial court told appellant it would consider an 8-year sentence, depending on what was contained in the PSIR. Ultimately, after

reviewing the PSIR, the court sentenced appellant to 10 years' confinement, which was within the punishment range of the plea, and 15 years less that the minimum sentence had appellant gone to trial.

Appellant confirmed during the plea colloquy that his counsel "had explained everything to [him] and answered all of [his] questions," that he was pleading guilty because he was guilty "and not no other reason" and that no one "coerced [him] in order to make [him] plead guilty." Appellant has failed to demonstrate that his guilty plea was involuntary based upon his counsel's recommendation that he plead guilty or his counsel's admonishments about the potential consequences of going to trial.

## C. Claim of Misinformation about Sentencing Hearing

Appellant next claims that trial counsel "assured appellant that he could present test messages from the complainant during his PSIH hearing to call her credibility into question" and cross-examine her on issues "determinative of guilt or innocence." Because these things did not happen during the PSIH hearing, appellant claims that his counsel gave him "erroneous advice" leading to an involuntary plea.

Appellant's written statement, made a part of the PSIR, references several text messages between the complainant and appellant about her not feeling well early the day of the assault, about her saying her throat "was sore from yelling,

19

crying and arguing" after the assault, and that later the complainant sent him "a text about choking." His statement said that he did not press her about what she meant when he received the "choking" text, but that he replied to her by "saying her throat would be sore for a few days and [h]e was sorry for everything." His written statement also admitted that he was mad when he pushed the complainant, but "never paid attention to where my hands were or how hard I pushed," and that he "must have pushed harder than I realized." The crux of his statement was that, despite the fight that he got into with complainant, they were on good terms until she had him arrested and that he did not think he injured her.

In trial counsel's affidavit, she stated that "when we were completing the PSI package, [appellant] asked if we could use the text messages to cross-examine the Complainant, so the Judge would hear all the mitigating evidence." Counsel told appellant that "we would, but only if the Complainant was called as a witness by the State." Trial counsel then withdrew, at appellant's request, before the sentencing hearing.

For purposes of the PSIR, appellant submitted a multitude of mitigation items, in addition to his statement, including character reference letters, and various pictures of his family and work. He could have submitted the text messages he claims now were so critical, or discussed them in his PSIR statement in a more detailed or less cryptic manner.

20

The complainant was at appellant's sentencing hearing. The trial court announced that he had read the complainant's PSI statement, but also told both the State and appellant that they could call her or any other witnesses they chose to testify. In her PSI statement, the complainant asked the court to sentence appellant to the maximum sentence, after chronicling the effects of appellant's abuse towards her, as well as his history of violence with both his ex-wives. Neither the State nor appellant's attorney called the complainant at the hearing.

According to appellant's trial attorney, she told appellant, *after* he pleaded guilty and they were working on a PSI package, that she would cross-examine the complainant about text messages at sentencing only if the State called her as a witness. Because the State did not call the complainant, there was no opportunity to cross-examine her. Moreover, Ms. Wallace—the trial counsel that represented she would cross-examine the complainant with the text messages if the State called her as a witness—did not still represent appellant at the sentencing stage and, thus, did not participate in the sentencing hearing. The record is silent as to appellant's new counsel's strategy with regards to text messages at the sentencing hearing.

Although appellant claims he would not have pleaded guilty but for that representation that his counsel would cross-examine the complainant about text messages, the trial court could have found credible counsel's representations that (1) she told appellant the text messages would only be used if the State called the

complainant, and (2) that the conversation of about the text messages took place *after* the guilty plea such that this alleged misrepresentation could not have impacted the voluntariness of the plea. *See Cavitt v. State*, No. 01-13-00900-CR, ___ S.W.3d ___, ___ 2015 WL 1869499, at *9 (Tex. App.—Houston [1st Dist.] April 23, 2015, pet. ref'd) ("The Court of Criminal Appeals has held that, in ruling on a motion for new trial, the trial court may resolve factual disputes on conflicting affidavits, especially when the parties and counsel have personally appeared before the trial court and the court is familiar with the historical facts." (citing *Holden v. State*, 201 S.W.3d 761, 764 (Tex. Crim. App. 2006)).

We must defer to the trial court's findings of credibility for affidavit evidence as we would for live testimony. *Labib v. State*, 239 S.W.3d 322, 334 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (citing *Ex parte Wheeler*, 203 S.W.3d 317, 325–26 (Tex. Crim. App. 2006) ("[R]eviewing courts defer to the trial court's implied factual findings that are supported by the record, even when . . . the evidence is submitted in written affidavits.")). Appellant's affidavit testimony was contradicted by his testimony at his plea hearing, in which he affirmatively stated that he was pleading guilty because he was guilty and that he was doing so freely and voluntarily. And appellant's uncorroborated testimony that he was misinformed by counsel, without more, is not sufficient to show that his plea was involuntary. *See Fimberg*, 922 S.W.2d at 208.

**D. Claim about waiver of 10-days' notice to amend indictment**

Appellant next argues that he was surprised when the State abandoned "impeding breath" language from the indictment on the day of trial, and wanted additional time before trial to prepare a defense. On the day of trial, the State proposed, and the parties agreed, to the following modification to the relevant language of the indictment:

> JASON CLIFFORD CONWAY, hereafter styled the Defendant, heretofore on or about November 16, 2013, did then and there unlawfully, intentionally and knowingly cause bodily injury to ALICIA BARRENS, hereafter styled the Complainant, WITH WHOM DEFENDANT HAD A DATING RELATIONSHIP, ~~by impeding the normal breathing or circulation of the blood of the Complainant~~ by APPLYING PRESSURE TO COMPLAINANT'S NECK.

According to appellant, trial counsel "failed to object to the abandonment of the impeding breath language against Appellant's wishes," and that impeded his ability to prepare for trial.

According to trial counsel's affidavit, she discussed the State's proposed changes to the indictment with appellant. The State wanted to abandon the language "by impeding the normal breath or circulation of the blood of the Complainant by APPLYING PRESSURE TO COMPLAINANT'S NECK." Appellant's trial counsel was opposed to that change because, as she explained to appellant, it would require the State to only prove appellant assaulted and injured the complainant, but not that he choked her. Trial counsel's affidavit explained

23

that after she told appellant that her concerns could be rectified by requiring the State to leave in language "by APPLYING PRESSURE TO COMPLAINANT'S NECK," appellant agreed to the modification. The trial court was entitled to credit trial counsel's testimony that appellant agreed to waive the 10-day period for amending an indictment. *Labib*, 239 S.W.3d at 334. And the record shows that trial counsel's decision was reasoned and strategic, as she determined that the State's proposed amendment did not unduly lessen the State burden so long as the amended indictment requiring the State to prove appellant injured the complainant by choking her. *Frangias v. State*, 450 S.W.3d 125, 136 (Tex. Crim. App. 2013) ("Reviewing courts are obliged to defer to strategic and tactical decisions of trial counsel, so long as those decisions are informed by adequate investigation of the facts of the case and the governing law.").

## E. Claim of Withholding Important Case Information

Next appellant claims that counsel waited until after his plea to tell him that the doctor who examined the complainant would not testify for the State. Appellant contends that, had he known this, he would have requested a continuance to subpoena the doctor and not pleaded guilty. Appellant accuses trial counsel of withholding this information intentionally because she knew he would not have pleaded guilty otherwise.

Trial counsel's affidavit states:

24

I never had any reason to believe the Doctor was not available to testify. I certainly did not tell the Defendant that I knew, prior to his plea, that the Doctor was not available. On the day of trial the ADA asked the Judge to have the Sheriff pick up the Doctor if the Doctor did not voluntarily appear. The Judge granted the request.

In appellant's second affidavit, he states that trial counsel stated that counsel actually "told me that the doctor was reluctant to show up to court" and that he "took that literally to mean that the doctor was not available to testify."

We must again defer to the trial court's determination of the credibility of the competing versions, as the court is entitled to credit trial counsel's testimony over appellant's uncorroborated testimony that his trial counsel mislead him in deciding a challenge to the voluntariness of a guilty plea. *Labib*, 239 S.W.3d at 334; *Fimberg*, 922 S.W.2d at 208. Appellant himself admits that he assumed that the doctor's "reluctance," meant the doctor was unavailable, but trial counsel's affidavit states that the trial court had already agreed to summons the doctor if he did not voluntarily appear. And, assuming there was some reluctance on the doctor's part, there is nothing in the record indicating the cause of that reluctance. Appellant's argument assumes that State had to ask the court to help secure the doctor's presence because the doctor was unwilling to testify favorably for the State. Given that there are scheduling and a multitude of other reasons for a witnesses' reluctance to testify at trial, the record does not support appellant's assertion that the doctor was not willing to testify that the complainant was injured.

**F. Appellant has not Demonstrated that the Trial Court Abused its Discretion in Denying his Motion for New Trial.**

Appellant testified at his plea hearing that he was fully informed and pleaded guilty because he was guilty, and that he had not been coerced by anyone. He was properly admonished, presenting a prima facie showing that his guilty plea was knowing and voluntary. *Martinez v. State*, 981 S.W.2d 195, 197 (Tex. Crim. App. 1998). We must defer to the trial court's decisions to be believe or disbelieve appellant's assertions about his trial counsel's performance and the voluntariness of his plea. *Labib*, 239 S.W.3d at 334 (citing *Ex parte Wheeler*, 203 S.W.3d at 325–26 ("[R]eviewing courts defer to the trial court's implied factual findings that are supported by the record, even when . . . the evidence is submitted in written affidavits.")). Appellant has not shown that the trial court abused its discretion by determining that appellant failed to show that (1) his counsel's advice was outside the range of competency demanded of attorneys in criminal cases, and (2) that, but for counsel's conduct, the defendant would not have pleaded guilty and would instead have gone to trial. *See Starz v. State*, 309 S.W.3d 110, 118 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) (citing *Ex parte Moody*, 991 S.W.2d at 857–58). Accordingly, we overrule appellant's points of error one and two.

## CONCLUSION

We affirm the trial court's judgment.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Massengale and Brown.

Do not publish. TEX. R. APP. P. 47.2(b).